MAYAGÜEZ SUGAR COMPANY, INC., Plaintiff and Appellant, *v.* RAFAEL SANCHO BONET, TREASURER OF PUERTO RICO, Defendant and Appellee.

No. 8918.   Argued December 19, 1944.—Decided March 23, 1945.

*J. J. Ortiz Alibrán* for appellant.   *Jesús A. González, Acting Attorney,* and *Carmen B. Hernández, Deputy Attorney General,* for appellee.   *James R. Beverley, R. Castro Fernández,* and *José López Baralt,* as *amici curiae.*

MR. JUSTICE DE JESÚS delivered the opinion of the court.

For the purpose of levying the tax on plaintiff's property for the fiscal year 1938–1939, the Treasurer of Puerto Rico appraised the buildings and machinery for the manufacture of sugar at $303,400. The plaintiff appealed to the Board of Review and Equalization which reduced the appraisal to the amount of $296,000. Claiming that the market value of the buildings and machinery was $150,250 on January 15, 1938, the plaintiff paid under protest the tax as reduced by the Board, and brought this action in the district

court for the return of $3,367.56 which it alleged had been wrongfully collected together with the surcharges and the legal interest from the date of the filing of the complaint. After hearing the case on its merits, the district court dismissed the complaint with costs on the plaintiff, on the ground that assuming that the assessment made by the Board was correct, it should not be disturbed by the court unless the taxpayer showed that the same was so excessive as to be oppressive and unjust, and in support of its decision, it cited among others, *Saurí & Subirá* v. *Treasurer,* 26 P.R.R. 543.

We are not aware of the method the Board used in calculating the market value of the buildings and the machinery of the plaintiff. But we do know that the assessor employed by the Treasurer to appraise the property assessed the buildings and the machinery at the sum of $374,124; that the Treasurer, *motu proprio,* reduced that appraisal to $303,400; and that the Board in turn reduced the latter sum to $296,000, the record not disclosing what method was used for this reduction.

At the trial Eduardo Saldaña, Engineer Assessor of the Sugar factories in the Treasury Department since 1937, testified that he assessed the property in question, and explained in detail the method which he used in fixing at $374,124 the market value of the buildings and the machinery of the plaintiff. The method may be explained thus:

An inventory of the machinery is made including in it the physical value of the building wherein the machinery is located. In order to assess each appliance or machine, he determines the cost of replacement. After determining it, he finds out the year when the appliance or machine was installed, thereby determining its age at the time of the valuation; he determines the life of the appliance or machine and its scrap value and by substracting the latter from the cost of replacement he finds the value of depreciation. He

determines whether the machine should be depreciated because · of its obsolescence and on the depreciable value he reckons 30 per cent—the percentage of the value which according to the tables he uses is the one that should be applied to this case. To this he adds the percentage of overhead expenses, which he estimates at 12 per cent of the cost of replacement without deducting the depreciation. And to all of this he adds what he calls the enlivening factor which he computes by deducting from the net profits yielded by the Central during 1940–41, the taxes paid, the reserve for the replacement cost and interest on investment, and by capitalizing the remainder, for the purpose of the sugar industry, at 35 per cent.

As stated by the judge of the lower court the decisions in Puerto Rico as well as in the United States have established as a general rule, that the appraisal made by the Board or the officers in charge of the assessment of the property is presumed to be correct and it is incumbent on the taxpayers who challenges the same to show by persuasive evidence that the assessment is so excessive as to be unjust and confiscatory, and he should show to the court what is the reasonable market value of the property. *The Ensenada Estates Inc.* v. *Hill*, 24 P.R.R. 462; *Viera* v. *Domenech, Treas.*, 53 P.R.R. 310; *Riera* v. *Buscaglia, Treas.*, 58 P.R.R. 763; *General Electric Co.* v. *City of Erie*, (Pa., 1933) 168 A. 534; 3 Cooley, The Law of Taxation (4th ed., 1924), pp. 2298–2299.

■■ It is unnecessary to determine whether the method used by the assessor was adequate, unless it is shown by persuasive evidence that the valuation finally made by the Board was so excessive as to be unjust or confiscatory. We have already seen that the assessor originally appraised this property at $374,124, that the Treasurer, of his own initiative, reduced it to $303,400, and that finally the Board, whose members are presumed to be experts in the matter of prop-

erty assessment, reduced it to $296,000, thereby establishing a difference of $78,124 between the original assessment of engineer Saldaña and the one fixed by the Board. The value $150,250, given by the plaintiff to the buildings and machinery is, in our opinion, manifestly erroneous, inasmuch as on computing it, some elements of value which every purchaser takes into account in order to determine the price that he should pay,—such as the profit yielded (Annotations, L.R.A. 1916 C, p. 529; 95 A.L.R. 442), place of location, control of business, transportation facilities, and nature of soil,—were not considered. *Saurí & Subirá* v. *Hill, supra, Assessors of Quincy* v. *Boston Consol. Gas Co.*, (Mass., 1941) 34 N. E. (2d) 623. In order to reach the amount of $150,250 the plaintiff only considered original cost less depreciation. The result can not be the market value of the property, but the cost of depreciation. It can not be contended that the property has no market value by the mere fact that there is no one actually interested in buying it, for when we speak of a market value we mean a hypothetical buyer in a hypothetical market. *General Electric Co.* v. *City of Erie, supra,* p. 536.

Inasmuch as the plaintiff did not offer in the lower court a computation which reasonably revealed the market value of this property, that is, what someone wanting to buy would be willing to pay for it considering its location, condition, and the profits that the factory might yield, we must conclude that the lower court did not err in dismissing the complaint.

The judgment appealed from is therefore affirmed.