General Electric Co., Appellant, *v.* City of Erie.

Argued April 13, 1933.

Before TREX-
LER, P. J. KELLER, CUNNINGHAM, BALDRIGE, STADTFELD,
PARKER and JAMES, JJ.

*J. M. Sherwin* and with him *W. S. Carroll*, for appellant.

*J. S. Jiuliante*, Assistant City Solicitor and with him *Edward M. Murphy*, City Solicitor, for appellee.

OPINION BY CUNNINGHAM, J., October 2, 1933:

This appeal is by a property owner from a decree dismissing its appeal from an assessment of certain real estate for local tax purposes. The General Electric Company, appellant herein, owns a property of approximately twelve acres within the limits of the City of Erie. Upon this plot of ground has been constructed a concrete reservoir, of a capacity of five million gallons, for the purpose of maintaining an emergency supply of water for use by appellant at its plant about 1½ miles distant. For the year 1930 the City of Erie assessed the property as follows: 12 acres of land $2,100, concrete reservoir $43,000, or a total of $45,100. The General Electric Company took an appeal to the court of common pleas upon the ground that the reservoir had been overvalued; its appeal was dismissed in an opinion by COPELAND, P.J., of the Tenth Judicial District, specially presiding, upon the broad ground that appellant had not met the burden resting upon it of showing that "the assessment is higher than the market value or higher than that of other similar property."

Appellant presented one witness, Hamberger, on the question of value. His general qualifications as a real estate expert were admitted, but it was apparent that he had no familiarity with reservoirs, and that, in fact, he failed to give this reservoir any value. Substantially, he stated he was familiar with the neighborhood, that it was mostly farm land, and that there were no manufacturing plants or factories nearby. When asked what the property in question would have sold for at public sale in 1930, he said, "I don't

think it would sell. If the property was offered for sale I don't think it would sell for over four or five thousand dollars; there would be no buyers for that kind of property." When asked what farm land in the vicinity sold for, he added, "I would say there was very little demand for property of that kind in September, 1930. Probably five or six years ago you could have gotten five or six hundred dollars an acre for it, but you could not receive that for it in September, 1930. I don't believe you could sell it for three or four hundred dollars an acre, because there are no buyers."

On cross-examination he was asked, "Q. You don't pretend to be an expert on the value of reservoirs, do you? A. I claim to be an expert on what I know what I could get for it, without being an expert. Q. Are you an expert on the market values of reservoirs? A. No, I know how much I could get for that property. Q. Then you would say that property out there itself was worth $300 to $400 an acre, is that correct, in September, 1930? A. Yes, sir. Q. Then you would say that the assessment of the City of Erie at less than $200 an acre was a low assessment, wouldn't you? A. That is about the way they assess the other properties. Q. It would be a fair assessment as far as the real estate is concerned? A. Yes, sir." He admitted that he did not know either the cost or capacity of other reservoirs in the city.

On the other hand, the city's valuation was based upon sixty per cent of the estimated cost of the reservoir. While it put three witnesses on the stand, their testimony may be summed up in the following excerpt from the testimony of Porkorski, one of the assessors: "Q. What was that valuation that you placed upon it? A. We based it upon a value from observation of other reservoirs. We investigated the cost of the reservoir up on the hill at Cherry Street ...... We

computed the amount of square feet in that reservoir up there on the hill and the General Electric reservoir and from observations we have made of the cost of that style of construction we come to the conclusion that the cheapest that a reservoir of that type could be built for was one dollar a square foot. There is approximately 72,000 square feet of concrete in there and we placed an assessment of 60% on what we figured the reservoir to be worth."

We agree with the court below that appellant failed to meet the burden of proof resting upon it. It may be conceded that the valuation fixed by the city was based upon a wrong theory. The statute requires that the assessors "shall value the property at such sums as the same would, in their judgment, bring at a fair public sale thereof." (Act of June 27, 1913, P. L. 568, Article XV, Section 4). It has been definitely ruled time and again that the reproduction cost of a building is not of controlling effect: Metropolitan Edison Co.'s Appeal, 307 Pa. 401, 161 A. 303; Pennsylvania Stave Company's Appeal, 236 Pa. 97, 84 A. 761. On the other hand, the court below was given no competent evidence upon which to base a lower valuation. In order to sustain its appeal, appellant had the duty not only of showing that the city's figures were incorrect, but also of offering a credible substitute. The presumption in favor of the assessment stands until overcome by proper evidence: Metropolitan Edison Co.'s Appeal, supra; Kaemmerling's Appeal, 282 Pa. 78, 127 A. 439. This, the appellant did not do. Hamberger put no specific value on the reservoir. On the contrary, as the court below points out, his answers show clearly that he valued the plot without giving the reservoir any consideration. Indeed, his testimony, taken as a whole, indicates that in his mind the property had value only as farm land. Appellant also contends, in its brief, that the property

is only to be considered as farm property for assessment purposes, and that the reservoir has nothing but junk value.

The court below, therefore, was given no basis upon which to make a reduction, even if the theory of the assessment was incorrect. It was not bound by an opinion of value which, on its face, failed to take all elements of value into consideration and, indeed, excluded a substantial element. The argument that the reservoir was a white elephant is not convincing. There may be instances in which a construction is such an extravagance or oddity that it literally has no market value. A reservoir, however, would not seem to fall within this category. This particular reservoir evidently served a real purpose for appellant, a going concern, and conceivably might be of the same use to others. The argument of appellant, if sound, would apply equally to a factory located in a rural community, or in general to any building not of the same general type as those surrounding it. A market for such a structure might be negligible in the sense in which we speak of a market for a farm or dwelling, but taxation has never been escaped upon that ground. A somewhat similar problem arose in Pennsylvania Stave Company's Appeal, supra, where the Supreme Court said, at page 103:

"Something is said in the opinion of the learned court below about uniformity of taxation, which as a general rule is a controlling principle. It is difficult to give effect to this principle in the case at bar, because there is no other property in the township or county like that here involved, and with which a comparison can be made. The property in question here is taxed as real estate, but there is no other real estate of the same kind in the taxing district, and hence no standard by which to measure its value as compared with the value of other property of like character. In

such a case the assessable value must be determined by taking into consideration those elements which give it a market value. Cost value of such a property is not as a rule a proper measure of market value, and under our statutes should not be given controlling effect in ascertaining assessable value. All elements of intrinsic value tending to give the property a market value should be considered, such as machinery, equipment, and permanent improvements, to the extent that they may affect selling price."

Admittedly, real estate values are difficult of ascertainment in many cases, due to the number of elements, tangible and intangible, involved. The task becomes doubly so when dealing with structures designed for a particular purpose. The confusion in some of the cases arises from an assumption that the lack of a general market negatives the existence of any market. The restricted market may possibly affect value, as may location, depreciation, obsolescence, or other factors; but it cannot be said that no value exists where a structure is concededly serving a useful purpose. The reported cases in this state do not appear to have considered this problem in detail. Turning to other jurisdictions, however, a pertinent case is that of Turnley v. City of Elizabeth, 76 N. J. Law 42, 68 Atl. 1094. There, the assessment on a residence of peculiar and expensive construction was involved. The court pointed out that the owner had incorporated into the building a number of features which added to its cost, but which enhanced its market value little or nothing. On the other hand, it added:

"We are not disposed, however, to give much force to the argument that, because there are very few actual buyers for so costly a residence, the valuation to be placed upon it under the statutory criterion should be correspondingly depreciated. The criterion established by the statute is a hypothetical sale; hence the

buyers therein referred to are hypothetical buyers, not actual and existing purchasers."

We are, therefore, of opinion that the reservoir should not be treated as valueless simply because it is located in a farming community; but that the proper test should be what one who needed such a reservoir would be willing to pay for it in view of its location, condition, and the use to which it could be put. Since appellant failed to make a bona fide calculation along this line and submit the result to the court below, that tribunal did not err in holding that the assessment must stand for want of some better figure to supersede it.

Appeal dismissed at costs of appellant.