**In the Matter of TIME SALES FINANCE CORPORATION and its wholly owned subsidiary corporations et al.**

**Appeal of GRACE BUILDING CO., Inc.**

**No. 19069.**

United States Court of Appeals, Third Circuit.

Argued May 17, 1971.

Decided July 7, 1971.

---

Alfred I. Breinig, Jr., Jenkintown, Pa., for appellant.

Sidney Chait, Adelman & Levine, Philadelphia, Pa., for Trustee.

Before SEITZ, VAN DUSEN and ADAMS, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This is an appeal from a district court order of April 22, 1970, which affirmed February 17 and 18, 1970, orders of a referee in bankruptcy holding certain Delaware County, Pennsylvania, treasurer's tax sales void, and denying appellant's motion to reopen the hearing on the validity of the treasurer's tax sales.

This case arises in the context of arrangement proceedings under Chapter XI of the Bankruptcy Act[1] initiated by Time Sales Finance Corporation (Time Sales) and its wholly-owned subsidiary, Marpoole, Inc. (Marpoole), by means of petitions for arrangement filed on April 5, 1968, and June 18, 1968, respectively. Among the assets of Marpoole on, and before, October 25, 1966, were five duplex row houses in Haverford Township, Delaware County, Pennsylvania. Interim school taxes levied on the five houses for the year 1963 were not paid. On October 24, 1966, the five houses were sold for the delinquent school taxes by the treasurer of Delaware County at a tax sale. The houses were purchased by

---

1. 11 U.S.C. § 701 et seq. (Supp. V, 1969).

the appellant, Grace Building Co., Inc. (Grace). The statutory two-year redemption period, during which Marpoole could exercise a statutory right of equity of redemption to redeem the houses from the tax sale, expired on October 24, 1968. In November or December 1968, the receiver of Marpoole discovered the treasurer's tax sale in the course of preparing to sell the five houses. On January 27, 1969, the receiver petitioned the referee in bankruptcy to hold the tax sale invalid, to approve the sale of the five houses, and to determine the respective rights of Marpoole, Grace, and the mortgagee to the proceeds of the sale.

After hearings on February 12 and February 24, 1969, the referee entered an order on March 12, 1969, authorizing the receiver to sell the five houses, and directing him to hold the proceeds in escrow pending determination of the rights of the parties to the proceeds. The referee commenced hearings on the respective rights of Marpoole, Grace, and the mortgagee on March 20, 1969. The key issue in these hearings was the validity of the tax sale, and resolution of that issue turned on whether or not Marpoole received notice of the tax sale. It was conceded that the official notice of the impending sale required by statute[2] to be sent by registered or certified mail to the owner, Marpoole, was not sent to Marpoole, but was instead sent only to the title insurance company. Grace contends that Marpoole received notice of the sale from the title insurance company, and that actual knowledge of an impending tax sale prevents subsequent invalidation of the tax sale. The receiver for Marpoole contends that Marpoole did not receive notice of the sale from anyone. The receiver does not urge, however, on this appeal that the official notice required by statute is a prerequisite to a valid tax sale.[3]

After hearing testimony on the respective rights of Marpoole, Grace and the mortgagee on March 20, 1969, the referee adjourned the hearings until April 9, 1969, in order to give Grace an opportunity to inspect the records of Marpoole pursuant to a discovery order issued by the referee on March 20, 1969. At the hearing on April 9, the receiver for Marpoole produced by subpoena one witness, an officer of the mortgagee. Counsel for Grace also produced by subpoena one witness, Samuel C. Nissenbaum, the alleged president and chief executive officer of both Marpoole and its parent, Time Sales. After giving his name and address, Mr. Nissenbaum asserted his fifth amendment privilege and refused to answer any and all questions put to him, including the questions whether he had been president and chief executive officer of both Marpoole and Time Sales and whether he had had actual knowledge of the tax sales before they took place, on the ground that the answers might tend to incriminate him. At the conclusion of Mr. Nissenbaum's non-testimony, counsel for Grace requested a continuance, in order that he might (1) introduce letters from the files of Time Sales which opposing counsel had indicated that he would produce but which opposing counsel had left at his office

---

2. 72 Pa.Stat.Ann. § 5971g (1968).

3. The decisions of the Supreme Court of Pennsylvania suggest that actual knowledge of an impending tax sale is sufficient to prevent subsequent invalidation of the tax sale, despite the failure of the county treasurer to send the official notice required by 72 Pa.Stat.Ann. § 5971g (1968). See In re York County Tax Claim Bureau, 404 Pa. 654, 660, 171 A.2d 765, 768 (1961); Watson v. Ciaffoni, 385 Pa. 16, 122 A.2d 56 (1956); Hess v. Westerwick, 366 Pa. 90, 99, 76 A.2d 745, 749 (1950); In re Ross, 366 Pa. 100, 76 A.2d 749, 752 (1950). The Pennsylvania trial courts have so held. See In re Lehigh County Tax Claim Bureau, 33 Lehigh Co.L.J. 279 (1969); Norton v. Tax Claim Bureau, 14 Chester Co.Rep. 142 (1966); Kimmons v. Aronauer, 13 Chester Co.Rep. 85 (1964). In the absence of the availability of Pennsylvania authorities contrary to the foregoing, if there is a valid finding that Marpoole had actual knowledge of the proposed tax sale, whatever is determined to be the net proceeds of the receiver's sale should be awarded to Grace as opposed to the receiver of Marpoole.

(N.T. 411–12, 426), and (2) produce witnesses whose whereabouts were being sought as a result of the information found in the records of Marpoole, access to which had been ordered by the referee on March 20. A continuance until April 22, 1969, a date on which other matters relating to the Time Sales arrangement were to be heard before the referee, was granted. On April 22, counsel for Grace offered no testimony, and requested instead a further continuance in order to ascertain the whereabouts of witnesses. The referee denied the request for a further continuance, and ordered the hearings closed.

On June 17, 1969, counsel for Grace petitioned the referee to reopen the hearings so that Grace might offer the testimony of the former secretary of Marpoole and Time Sales, one Barbara Rubin, who, according to the petition to reopen, would testify that Marpoole and Time Sales had received notice of the impending tax sales of the property in question. The petition recited that Grace was unable to locate the witness prior to the last hearing on April 22, and

recited in considerable detail the sequence of events and the difficulties besetting Grace [4] between the referee-ordered inspection of the Marpoole records and the ultimate discovery of the whereabouts of the witness. The referee set this motion down for a hearing on July 14, 1969. The newly-discovered witness was present at the July 14 hearing, ready to testify; and counsel for Grace indicated that direct examination of the witness would not require more than five or ten minutes. At the hearing, counsel for Grace gave a detailed summary of the reasons for delay in petitioning to reopen after the whereabouts of the witness was discovered, which consisted chiefly of the fact that the witness had initially refused to cooperate and then had vacillated between cooperation and non-cooperation, and counsel stated that the witness would verify these facts. The referee, operating under the misapprehension that he had already decided the issue of the validity of the tax sale, denied the petition to reopen at the close of the July 14, 1969, hearing.[5]

4. In essence the petition recited that Barbara Rubin had moved twice after leaving the employ of Marpoole and Time Sales, and was discovered only after a certified letter was forwarded from the last known address that counsel for Grace was able to locate.

5. The referee held, as an additional reason for denying the petition to reopen, that Grace was guilty of laches. We have often noted that, aside from mere passage of time, two elements of laches are unreasonable delay in light of the equities of the case and undue prejudice to the opposing party. See, e. g., Ward v. Union Barge Line Corp., 443 F.2d 565 (3rd Cir., filed May 10, 1971); Burke v. Gateway Clipper, Inc., 441 F.2d 946 (3rd Cir., filed May 4, 1971); Mroz v. Dravo Corp., 429 F.2d 1156 (3rd Cir. 1970). There is no basis for a finding of inexcusable delay in this case, for counsel for the receiver observed that the chain of evidence leading to the discovery of the whereabouts of Barbara Rubin was probably not uncovered until the referee, after the hearings had commenced, ordered Marpoole to permit counsel for Grace to inspect the records of Marpoole (N.T. 500).

Thus it appears that non-cooperation on the part of Marpoole was partially responsible for the delay, as was the refusal of Marpoole's president to testify. Nor is there a basis for a finding of undue prejudice to the receiver as a result of the passage of time. When the referee asked counsel for the receiver at the April 9, 1969, hearing what harm would be suffered by the receiver or by the estate in the event that a continuance were granted, counsel for the receiver responded:

"I thing it is the duty of counsel, sir, to move for expeditious determination of the case and the proceedings. We could have requests for continuance ad infinitum because the applicant may desire to find witnesses. I don't think that is proper procedure." (N.T. 433). The fact that the receiver had to pay interest to the mortgagee is not persuasive. First, there is no evidence that these interest charges were occasioned by Grace's delay. The record suggests the contrary. Second, there is no indication that obligations to the mortgagee could not have been discharged pending resolution of the respective interests of Marpoole and Grace in the proceeds of the sale, nor is there any indication why the proceeds of the sale

The district court was petitioned to review this decision, as well as other decisions of the referee. On October 24, 1969, the district court held, *inter alia,* that the referee had not prior to the July 14 hearing determined the validity of the tax sale, but, on the contrary, had merely made a jurisdictional determination and a preliminary determination of the validity of the tax sale, without prejudice to Grace's rights to the proceeds of the tax sale. Accordingly, the district court directed the referee to reconsider Grace's petition to reopen, and to make a final determination of the validity of the tax sale and the rights of the respective parties to the proceeds. On February 17, 1970, the referee held the tax sale invalid, and ordered the proceeds of the sale of the property, after deduction of certain counsel fees, apportioned between Marpoole and the mortgagee, according to their respective interests in the property.[6] On February 18, 1970, the referee denied after reconsideration Grace's June 17, 1969, motion to reopen the hearings. On April 22, 1970, the district court in a memorandum opinion affirmed both of these orders of the referee. We reverse.

The issue in this case is whether the referee abused his discretion in refusing to reopen the hearings to hear the brief testimony of one newly-discovered witness. This is an issue that must be decided against the background of the procedural history and all of the facts and circumstances of the case. The factual context of the refusal to reopen must be considered in light of equitable principles, for bankruptcy courts are essentially courts of equity.[7]

One of the chief purposes of the bankruptcy laws is "to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period." Katchen v. Landy, 382 U.S. 323, 328, 86 S.Ct. 467, 472, 15 L. Ed.2d 391 (1966).[8] Parties do not have an absolute right to reopen a hearing in order to introduce further testimony. On the contrary, a referee should not be expected to reopen a closed proceeding after the parties have had the normal opportunities to present evidence absent a special reason for permitting reopening.[9] In this case a special reason, inability to locate an important witness despite diligent efforts, was advanced. Furthermore, the parties treated the subject matter to which the witness would testify as being of critical significance.[10] In light of the fact that the referee did not finally decide the issue on which Grace sought to offer additional testimony until eight months had elapsed after Grace filed its petition to reopen the hearings, we hold that it was an abuse of discretion to refuse to reopen the hearings. Counsel for Grace represented that direct examination of the newly-discovered witness would not require more than five or ten minutes. The witness was to testify to matters previously considered, therefore there was little reason to believe that volumi-

---

were not utilized by the referee to earn interest to offset that due the mortgagee. The fact remains inescapable that the proffered testimony would not have occasioned appreciable delay, while the ultimate decision on the validity of the tax sale was not issued until seven months had elapsed after the refusal to reopen. No additional evidence was received during that seven-month period.

6. The referee awarded to Grace the sum it paid for the properties at the tax sale, plus interest at the rate of six percent from the date of the tax sale.

7. Katchen v. Landy, 382 U.S. 323, 327, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966);

Pepper v. Litton, 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281 (1939); Local Loan Co. v. Hunt, 292 U.S. 234, 240, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

8. Quoting Ex Parte Christy, 44 U.S. (3 How.) 292, 312, 11 L.Ed. 603 (1845).

9. In re Booss, 154 F. 494 (E.D.Pa.1907); *see* California Airmotive Corp. v. Bass, 354 F.2d 453 (9th Cir. 1965).

10. *See* California Airmotive Corp. v. Bass, 354 F.2d 453, 455 (9th Cir. 1965); cf. N.L.R.B. v. Phaostron Instrument and Electronic Co., 344 F.2d 855, 858 (9th Cir. 1965). *See also* note 3 *supra.*

nous responsive testimony would be forthcoming from the receiver. The additional testimony could have been received at the July 14, 1969, hearing on the motion to reopen, fully seven months prior to the referee's final decision on the validity of the tax sale. Under these circumstances, the hearings should have been reopened. There is no substantial reason to believe that reopening the hearings would have delayed the ultimate disposition of this case.

Accordingly, the April 22, 1970, order of the district court will be reversed, and the case will be remanded with directions that a prompt hearing be held before the referee to receive the testimony of Barbara Rubin and for further proceedings consistent with this opinion.