Halgus Land Company *v.* Holt, Appellant.

*Myron W. Warman,* with him *Philip T. Warman,* and *Warman & Warman,* for appellant.

*Thomas A. Waggoner,* for appellee.

OPINION PER CURIAM, April 4, 1973:

The six judges who heard this appeal being equally divided the order is affirmed.

---

CONCURRING AND DISSENTING OPINION BY HOFFMAN, J.:

The appellee purchased the property of the appellant at a tax sale subsequently held to be invalid. In this appeal, we must decide whether error was committed in fixing the liabilities of the parties with regard to the property in question.

On October 16, 1964, appellee purchased the property at a tax sale for a consideration of $2500.00. Following the sale, William T. Guseman, president of the appellee-corporation, informed appellant of the purchase and advised him that he could repurchase the

property for the same consideration plus any costs expended by appellee incident thereto. Approximately a month later, appellant came to see Guseman and inquired whether he could still buy the property. Appellee repeated the same offer. On March 19, 1965, the Tax Claim Bureau executed and delivered to the appellee its deed for the property, which was duly recorded. On April 6, 1965, appellee's attorney informed appellant in writing that the tax deed had been received and that unless he heard from him within one week, appellee intended to take possession of the property. In May of 1965, appellant informed Guseman that he intended to accept the offer of repurchase. Papers were drawn up, but when appellee met with appellant in June of 1965, appellant said "he didn't think he was gonna fool with the property."

Thereafter, and with appellant's full knowledge, appellee made extensive repairs and improvements to the property, which had fallen into an uninhabitable and deplorable condition. On November 1, 1966, appellee leased the premises to Laurel Motors, who occupied the premises and made further improvements to the premises. During the period of tenancy, appellee received rents totalling $2,860.00.

On July 18, 1966, appellant instituted proceedings to quiet title to the property acquired at the tax sale. After hearing the evidence, the trial court invalidated the tax sale and dismissed appellee's allegations of ownership. Appellee has not challenged the correctness of the trial court's ruling upon the issues of title to the subject property.[1] The trial court in its decree

---

[1] The trial court properly ruled that appellee possessed defective title, by reason of lack of proper notice. The record reveals that the proposed tax sale was not posted by the Fayette County Claim Bureau as required by statute. As our Supreme Court clearly stated in *Aronauer Appeal*, 404 Pa. 654, 657, 171 A. 2d 765

further ruled that the appellant had to pay the appellee the sum of $14,719.47 for various costs, taxes, and improvements made by the appellee and its tenant. The lower court further disallowed a set-off in favor of appellant for rents paid and received by the appellee from its tenant during the period of wrongful possession. It is from the court's rulings regarding the liabilities owed by the parties that this appeal arises.

As a general proposition, a person who has been unjustly enriched at the expense of another is required to make restitution to the other. Restatement of Restitution, §1. Specifically with regard to improvements made upon the land of another because of the reasonable but erroneous mistake of law, the Restatement of Restitution, §53(2)(a) provides that either the mistaken possessor of the land or a third person, on whose account he acts believing the possessor to be the true owner, may recover "the value of the labor and materials used therein [improvements] to the extent that the land is increased in value if the mistake is reasonable. . . ."

In this Commonwealth, the rights of one who has made improvements on land purchased at an invalid sale for taxes are established by statute. The Act of 1842, April 12, P. L. 262, Sec. 20, 72 P.S. §5875, in relevant part, reads as follows: "[T]he acts of assembly shall be so construed that a recovery for improvements as aforesaid shall be an incident in all cases whatsoever, where there is a recovery against a tax title, without regard to the nature of the defects of said title, . . . the jury under the direction of the court trying the cause *shall assess the value of the improvements* made by such person, or those under whom he claims. . . ."

(1961), "The Act of 1959, November 19, P. L. 1513, Section 3 . . . amended Section 602 now makes all three types of notice necessary for the validity of any tax sale."

(Emphasis added). We have held that a purchaser at an invalid tax sale is entitled to the value of improvements made upon the land, unless the true owner can show that the purchaser knew of the defect at the time of the tax sale. By reason of the clear mandate in 72 P.S. §5875, supra, we felt obliged to remand for valuation of the improvements so made. *Cramer v. Conn*, 204 Pa. Superior Ct. 2, 201 A. 2d 261 (1964).

Appellant does not deny appellee's right to the *value* of improvements made by appellee in reliance on the validity of the tax title. What he does contend is that the lower court erred in granting appellee the full costs of those improvements rather than the value to the land caused by said improvements. I must agree with appellant's position.

The lower court, during the hearing, accepted bills and receipts introduced by the appellee evidencing the expenditures made in the repair, maintenance, and improvement of the premises. The trial judge did not make an independent evaluation of the enhanced value of the land caused by such improvements. While the record clearly reveals that the property prior to appellee's improvements was in a dilapidated condition, and that the condition was significantly improved by appellee's actions, neither the appellee, the tenant, nor any expert witness offered any testimony with regard to the value of those repairs and improvements to the land itself. This was error.

Instead, the trial judge took the sum total of appellee's expenditures and equated that total with the "value of the improvements" provided for in 72 P.S. §5875, supra. The case law in Pennsylvania outlines just what factors should be considered in determining the value of imrovements to the land. In none of the cases that I have reviewed have our courts relied solely upon the cost of the improvements in arriving at

"value". While the cost of construction or the estimated cost of reproduction, less depreciation, have been considered relevant factors in making that determination, our courts emphasize that such factors in themselves often bear little or no relation to the market value of such properties. *Appeal of Pennsylvania's Northern Lights Shoppers City, Inc.*, 419 Pa. 31, 213 A. 2d 268 (1965); *Traylor v. City of Allentown*, 378 Pa. 489, 106 A. 2d 577 (1954); *General Electric Co. v. City of Erie*, 110 Pa. Superior Ct. 206, 168 A. 534 (1933).

Where, as in the instant case, no evidence appears of record as to the fair market value of the property, the court must weigh a number of factors in making a determination. As was said by our Supreme Court in *Traylor v. City of Allentown*, supra at pp. 493-94, "The fact is that the appellants' witnesses based their valuation of the property not upon what it would likely bring at a fair public sale but upon their agreed reproduction cost of the buildings less depreciation to which they added an identical land value. . . . Indeed, the reproduction cost of buildings is not proper evidence for determining the fair market value of a property. Among the factors to be taken into account and given appropriate consideration, both severally and in combination, as respects the actual value of a particular property are 'the character of the work done and materials furnished in the construction of the building; its present condition of repair or disrepair; the wisdom or unwisdom of its location for [its intended use]; its modernity and adaptability for that purpose; the likelihood of competition with other and better buildings; and whether the property itself, and the neighborhood in which it is situated, are likely to increase or decrease in value.' Metropolitan Edison Co.'s Appeal."

Appellant contends that the lower court not only failed to consider factors in addition to the cost of improvements in coming to a determination of the value of improvements, but he further contends that certain expenditures were improperly classified as improvements, as they did not contribute in any way to the enhancement of the property nor did they become affixed to or part of the land. Appellant cites as examples of these misclassified expenditures: a dog collar; a nail puller; lead anchors; a garden hose adapter; chalk line; a fire escape; mowing; use of a truck; hauling the unattached fire escape to the premises; and, various types of insurance.

Improvements have been held to be those additions to the property which are useful and of advantage to the true owner and give the land additional value. *Noble v. Biddle & Newbold*, 81* Pa. 430, 437 (1876) ; *Putnam v. Tyler*, 117 Pa. 570, 588 (1888). To be an improvement the expenditures must have been *permanently beneficial* to the estate and have enhanced its value. Story's Equity, 779; Pomeroy's Equity, 1241. (Emphasis added). All those expenditures which either directly or indirectly went to "improve" the property should be considered "improvements". This would include labor, materials, and insurance to protect either the process of or the finished product of the work.[2] On the

___

[2] While a successful attack on tax title is not cognate with the remedy of redemption granted the true owner incident to a tax sale, the rights and liabilities of the parties as to expenditures and income produced therefrom are analogous. As the Act of 1923, May 16, P. L. 207, §32, as amended, Act of 1965, August 26, P. L. 383, §1, 53 P.S. 7293 provides, in relevant part: "The owner of any property sold under a tax or municipal claim . . . may . . . redeem the same . . . upon payment of the amount bid at such sale; the cost of drawing, acknowledging, and recording the sheriff's deed; the amount of all taxes and municipal claims . . .; the principal and interest of estates and encumbrances, not discharged by

other hand items of personalty that retain their character and have not been incorporated into the realty, may not be considered as improvements. The trier of fact should determine which, if any, of appellee's expenditures should be considered as "improvements" to the land and which either do not benefit the true owner or do not lose their character as personalty.[3]

Appellant further contends that his duty to reimburse appellee for improvements should be offset in the amount of the rents paid and collected by appellee from the tenant. This, I believe, is a meritorious claim. The effect of a successful attack on tax title is to return the parties to status quo, and to consider the true owner as owner from the time of the tax sale to the present as if there had been no intervening sale. Illustrative of that adjustment of equities is the duty upon the true owner to pay all taxes and interest upon the land accruing from the time of the tax sale to the present, despite the fact that possession actually had been in another. As appellant is responsible for all such debts

---

the sale and actually paid; the insurance upon the property, and other charges and necessary expenses of the property, actually paid, less rents or other income therefrom, and a sum equal to interest at the rate of ten per centum per annum thereon, from the time of each of such payments."

[3] The record discloses that the fire escape purchased and hauled to the property by the appellee was never affixed to the building thereon. As such, appellant is correct in asserting that the cost of the fire escape and the hauling thereof should not have been included in the list of improvements. Likewise, small tools or equipment not affixed to the property should have been excluded. It is impossible from the scant record regarding the nature and purpose of the insurance premiums claimed to determine whether those expenses were necessary to the maintenance and improvement of the property or were merely beneficial to the appellee alone. Each item claimed should be evaluated and justified before including it in the list of improvements for which appellant is responsible. Appellant is responsible not only for those improvements made by the appellee, but those of the tenant, as well. See, 72 P.S. §5875.

and must also reimburse the purchaser-appellee of the purchase price, all improvements made, and all taxes and expenditures made incident to the land, the true owner is entitled to the rents paid by the tenant using the benefits of the land during this intervening period. Had the tenant during the period paid the rental into escrow there could be no doubt whatever of the right of the appellant to the fund. The fact that the rents were paid directly to appellee, the possessor of the land holding under the superior title of the appellant, should in no way alter the result. Appellant, in my opinion, was entitled to such a setoff in the amount of $2,869.00.[4]

The remaining portions of the lower court's order are correct. There is no merit to appellant's contention that his obligation to pay the Tax Bureau all accruing taxes and interest creates a double payment of the same debt in his obligation to reimburse appellee of taxes it paid while in possession. The clear meaning of "accruing" taxes and expenditures owing the Tax Bureau dispels such an interpretation. Appellant is responsible to the Tax Bureau for those taxes and expenditures unpaid and owing from the period beginning with the tax sale to the present. His duty to appellee is to reimburse it for taxes actually paid during the same period. Furthermore, the lower court properly decreed that should appellant fail to make restitution within the time specified, title is to be confirmed in the purchaser. 72 P.S. §5875.

For the reasons stated above, the case should be remanded to the court below for a *jury* determination as to which items constitute improvements to the property, the valuation of the fair market value of the property as enhanced by said improvements, and to ad-

---

[4] See, *supra*, at footnote 2.

112

just that figure by crediting appellant with rents paid by the tenant to appellee during the period of appellee's possession of the land.

SPAULDING and CERCONE, JJ., join in this concurring and dissenting opinion.