## Lahr v. Faleski

*Leonard M. Cohn*, for plaintiff.
*Robert C. Brown, Jr.*, for guardian.
*William A. Duh*, for defendant.
*Stephen J. Marcincin*, for Tax Claim Bureau.

WILLIAMS, *J.*, November 2, 1977—This case comes before the court on a petition to set aside a tax sale and a complaint in equity on behalf of Albert C. Lahr, an alleged incompetent, by Easton National Bank and Trust Company (hereinafter

bank), his guardian, attacking the decree nisi of December 28, 1976, which confirmed absolutely, inter alia, a sale by the Tax Claim Bureau of Northampton County (hereinafter "Bureau") of a property owned by the incompetent in his own name under the authority of the Real Estate Tax Sale Law.[1]

The ultimate question controlling this case is whether the tax sale must be set aside because of the alleged failure of the Bureau to comply with the notice provisions of section 602 of the Real Estate Tax Sale Law.[2] However, before we reach that question there are some preliminary issues which must be resolved: namely, does the Real Estate Tax Sale Law apply to the case at bar and, if so, are the objections raised by plaintiff barred as untimely?

Initially we note that Albert C. Lahr was adjudicated an incompetent by the Orphans' Court of Northampton County on July 26, 1960, at no. 154—1960, and that the bank was appointed guardian of Lahr's estate on the same day. The adjudication of incompetency was recorded in the orphans' court index book no. 10, March 1958, and there has been no subsequent modification, alteration or vacation of that order. On September 15, 1970, Albert C. Lahr purchased the premises known as 919 Wyandotte Street, Bethlehem, Pa., and has used the same as his residence for the last seven years. The taxes paid during this time were paid by Mr. Lahr personally rather than by the

1. Act of July 7, 1947, P.L. 1368, 72 P.S. §5860.101 et seq.

2. Act of July 7, 1947, P.L. 1368, 72 P.S. §5860.602, as amended September 27, 1973, P.L. 268, sec. 6.

guardian of his estate. On October 21, 1976, property described as 219 Wyandotte Street was offered for upset sale and purchased by defendant, Henry A. Faleski.

Based on these facts the bank submits that at all relevant times Mr. Lahr's real property was in "custodia legis." By analogy to the attachment and execution rules of civil procedure, the bank contends that the Real Estate Tax Sale Law makes no provision for the enforceability of tax liens on real property in custodia legis. The bank thus contends that the sale is controlled by common law and that said law renders the sale invalid because the controlling rule of law is that property in the "custody of the law" may not be subjected to the levy of a writ of attachment and/or execution without permission of the court in whose custody the property is deemed to belong. We disagree. As was stated by our Supreme Court in Weicht v. Automobile Banking Corp., 354 Pa. 433, 47 A. 2d 705 (1946), "[t]he reason for the immunity of property in custodia legis is that to permit attachment or execution thereon by others would require a public officer to appear and defend a multitude of actions regarding the right to possession and would cause confusion and delay in the execution of legal process." The doctrine is not immutable and when the underlying policy is not frustrated, garnishment is permitted: Wheatcroft v. Smith et al., 239 Pa. Superior Ct. 27, 362 A. 2d 416 (1976). The sale of an incompetent's real estate for delinquent taxes differs considerably from an execution or garnishment procedure in which the government is the garnishee. In such a sale there is no annoyance or uncertainty arising out of disputes between individuals to whom money is owed and

those claiming a right therein by garnishment or execution. In a tax sale, the government is not hurled between competing interests; therefore, the public policy affording it immunity from such a precarious position is inapplicable. We hold, consequently, that the Real Estate Tax Sale Law controls the sale of an incompetent's real estate for delinquent taxes.

The facts relevant to the remaining issues are as follows: After a tax reassessment in 1974, a typographical error designating Lahr's property as "219 Wyandotte" instead of "919 Wyandotte" appeared in the county tax assessment records, but the map lot and block number description remained unchanged and the owner's address was listed correctly as 919 Wyandotte Street. For the years 1974, 1975 and 1976, Mr. Lahr received school and city tax bills properly identifying the property as 919 Wyandotte Street, and those taxes were paid by Mr. Lahr. For those same years, Mr. Lahr received county real estate tax bills which described the property taxes as "219 Wyandotte." Upon receipt of these bills Mr. Lahr called the Bureau and advised them of the erroneous description. The Bureau told him to disregard the bills with the "219 Wyandotte" description and did not advise him that the delineation was merely a mistake nor that he would later receive correct notices. Since Mr. Lahr did not receive any county real estate tax bills for the property known as 919 Wyandotte, he did not pay these taxes for the three years in question. However, as noted above, all tax bills with the correct description were paid. The only property Mr. Lahr owns on Wyandotte Street is his residence which is known as 919 Wyandotte and, although there is land in the

200 block of Wyandotte, there is no building with an address of 219.

On June 11, 1976, a notice of return and claim declaring the county real estate taxes to be delinquent was mailed by the Bureau via certified mail to Mr. Lahr and he signed and received the notice. On September 14, 1976, a notice of sale was mailed by the Bureau via certified mail to Lahr and he signed and received it. On September 30, October 7 and October 14, 1976, notice of sale of property known as 219 Wyandotte Street was advertised in the Easton Express and the Bethlehem Globe Times. On October 14, 1976, notice of sale was advertised in the Northampton County Reporter also describing the property as being owned by Albert C. Lahr and as being 219 Wyandotte Street. The assessor, Daniel G. Rotondo, identified a copy of the posting notice and his signature on the affidavit but his recollection of the posting was "not too good" and he failed to date the affidavit as to when he posted the property. The affidavit shows that 219 Wyandotte Street was the property posted.

On October 21, 1976, the property was offered for upset sale and was purchased by defendant, Henry A. Faleski. The court confirmed nisi the return of sale and general notice thereof was published by the Bureau on October 25, 1976. On December 28, 1976, the court entered a decree of final confirmation. The offer for sale, initial confirmation and final confirmation all described the property as "219 Wyandotte Street." The first time the property was correctly described was on January 5, 1977, when the Bureau delivered a deed to Faleski conveying property known as 919 Wyandotte. On February 3, 1977, plaintiff filed a complaint in equity

seeking to set aside the tax sale for failure to comply with the notice provisions of the Real Estate Tax Sale Law.

Defendant Faleski asserts that plaintiff's claim attacking the validity of the sale is barred because he failed to file exceptions or objections to the sale within 60 days of the return date of October 25, 1976. Defendant apparently relies on section 607(c) of the Real Estate Tax Sale Law which provides: "In case no objections or exceptions are filed to any such sale within sixty (60) days after the date of return, a decree of absolute confirmation shall be entered as of course by the prothonotary." However, such reliance is shortsighted in that subsection (g) of section 607 provides: "If no . . . exceptions are filed . . . and the sale confirmed absolutely, the validity of the tax, its return for nonpayment, the entry of the claim, or the making of such claim absolute and the proceedings of the bureau with respect to such sale, *except as to the giving of notice as required by the act* . . . shall not thereafter be inquired into judicially in equity or by civil proceedings . . . by any . . . person whatever." (Emphasis supplied.) The italicized words were added to the Real Estate Tax Sale Law by amendment via the Act of May 10, 1951, P.L. 258, sec. 1.

We find the reasoning of the companion cases of Hess v. Westerwick, 366 Pa. 90, 76 A. 2d 745 (1950), and Ross Appeal, 366 Pa. 100, 76 A. 2d 749 (1950), to be the basis for the above amendment and, therefore, illustrative to its intent. There, our Supreme Court held "that despite the provisions in the Act making the confirmation of the sale final and providing that the validity of the sale should not thereafter be inquired into, the owner could come in after confirmation and set the sale aside where he

had not been given notice of it. The basis for so holding is succinctly stated by Mr. Justice Ladner in the Hess case, supra, at pages 96-97: 'It is a fundamental provision of both our state and federal constitutions that no person shall be deprived of property except by the law of the land or due process of law. Without due process of law the right of private property cannot be said to exist.' " Pagni v. Com., 179 Pa. Superior Ct. 213, 217, 218, 116 A. 2d 294 (1955). Thus, "[it] does not seem illogical to assume that in all probability the 1951 amendment as set forth above was added to conform the statute to the holding in Ross Appeal." In re: Tax Sale of 1965, 87 Dauph. 57 (1967).

Without deciding whether lack of actual notice or knowledge of a tax sale is a precondition for an owner seeking to set aside a tax sale either by timely objections or pursuant to the "except clause" of section 607(g) after final confirmation, we find that Mr. Lahr did not have actual notice of the sale. The testimony of Mr. Lahr that in response to his telephone call to the Bureau, the Bureau told him to disregard the bills with the "219 Wyandotte" description and did not advise him that the delineation was merely a mistake and that he would later receive correct notices is sufficient basis for the above finding despite the later notices. Since the bank contends that there was improper notice under the act, the statute via section 607(g) expressly permits its attempt to set aside the sale despite final confirmation.

The bank's preliminary contention of improper notice is that the Bureau failed to give notice of the sale to the bank as Mr. Lahr's guardian and, therefore, did not strictly comply with the Real Estate Tax Sale Law. In light of the fact that the bank

failed to plead that it never received notice nor entered any testimony on the record concerning notice to the bank, we find Mr. Lahr to be the "owner" of the 919 Wyandotte property as that term is contemplated by the act and thus the party to whom notice is due. However, we note in passing that the definitional section of the act[3] defines "owner" as "the person in whose name the property is last registered, if registered according to law, and in all other cases means any person in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, or the reputed owner or owners thereof, in the neighborhood of such property. . . ." Since there is no dispute that after acquisition of the property in question title remained in Albert C. Lahr and that he has continuously maintained said premises as his residence, we would reiterate that he is the owner contemplated by the act, and it is to him, at his last known post office address, that the notices were to be mailed.

The bank next contends that the sale must be invalidated due to the fact that the Bureau did not post the property with a notice of sale. Since we agree with this contention, we will not address plaintiff Lahr's argument that there was improper notice due to the many erroneous descriptions of the property.

The pertinent section of the Real Estate Tax Sale Law reads as follows: "In addition to such publications, similar notice of the sale shall also be given by the bureau, *at least ten (10) days before the date of the sale*, by United States registered mail, personal addressee only, return receipt requested,

---

3. 72 P.S. §5860.102.

postage prepaid, to each owner as defined by this act and *by posting on the premises.*"[4] (Emphasis supplied.)

The controlling principle here is that the notice provisions of the Real Estate Tax Sale Law must be strictly complied with in order to guard against deprivation of property without due process of law: In re: Sale of Properties by Indiana County Tax Claim Bureau for Unpaid Tax Claims: Wanchisn, 22 Pa. Commonwealth Ct. 147, 348 A. 2d 440 (1975). More specifically, a tax sale of real estate which is not supported by notice by mail, advertising, and posting of the premises is invalid, and failure to give all three types of notice will require the court to set aside the sale. See Aronauer Appeal, 404 Pa. 654, 657 fn. 7, 171 A. 2d 765 (1961); Halgus Land Co. v. Holt, 224 Pa. Superior Ct. 103, 303 A. 2d 493 (1973); In re: York County Tax Claim Bureau, 90 York 146 (1976). Unlike the earlier version of section 603 which required posting only when the mailed notice was not received by the taxpayer, the amended version renders posting a requirement independent of the notices by advertisement and by mail: Wanchisn, supra, at 149, 348 A. 2d at 442.

It is an established principle of law that a prima facie presumption of the regularity of the acts of public officers exists until the contrary appears, and that such a procedural expedient is particularly suitable to tax sales: Curtis Bldg. Co., Inc. v. Tunstall et al., 21 Pa. Commonwealth Ct. 81, 343 A. 2d 389 (1975); Wheatcroft v. Schmid, 8 Pa. Commonwealth Ct. 1, 301 A. 2d 377 (1973). However, the affidavit on file with the Bureau and the

4. Supra, note 2.

testimony of the assessor as it relates to that affidavit are sufficient evidence to specifically rebut the aforementioned presumption; in fact, it may even prevent the presumption from arising. Where the person said to have done the posting testified that he had no independent recollection of the particular property, where he assumed he had posted it because the return of posting bore his signature, where he admitted that all his returns bore the same date although he had spent two separate days in posting, and where the owners testified to having visited the premises shortly after the date of the return and found the premises unposted, a common pleas court has held that the evidence of the posting of notice of a delinquent tax sale was insufficient: In re Armstrong County Tax Claim Bureau Sale of Properties, 66 D. & C. 2d 712 (1974).

In this case the affidavit of posting indicates that the assessor posted no. 219 Wyandotte and it fails to indicate the date of the posting. The assessor, Daniel Rotondo, stated that his recollection of the posting in question was "not too good," and his testimony was able to establish at most that he did not post any premises at 219 Wyandotte, but rather a property at "the top of the hill." There was no further identification of the property "at the top of the hill." There also was no testimony as to the date of posting a notice of sale on any house. When this is combined with Mr. Lahr's unequivocal testimony that a notice of sale was never posted on his house, we find that any existing presumption of regularity is rebutted. We also find that the evidence presented by the Bureau and defendant Faleski fails to show with any certainty that the property known as 919 Wyandotte was ever posted with a notice of sale

or, if posted, whether it was posted ten days or more before the sale as required by section 602 of the Real Estate Tax Sale Law.

The notice provisions of the Tax Sale Law must be strictly adhered to by the Bureau, for to require less would be to deprive the property owners of their property without due process of law: Wanchisn, supra. Furthermore, the purpose of the act is to protect local government against wilful, persistent, longstanding delinquents and not to punish taxpayers who omitted to pay taxes through oversight or error: Ross Appeal, 366 Pa. 100, 76 A. 2d 749 (1950). The sole error here was on the part of the county and is probably the only reason for this case. Since Mr. Lahr paid all tax bills that properly identified his property, it is not improbable that this case would not now be before us had the county properly identified the property subject to its real estate tax or corrected the error via the gratuitous opportunity afforded it by Mr. Lahr's phone call.

Since this tax sale cannot be permitted to stand, we enter the following

## ORDER

And now, November 2, 1977, it is ordered, adjudged and decreed that the complaint in equity and the petition to set aside sale of plaintiff-bank attacking the decree nisi of December 28, 1976, is hereby sustained and the sale of the premises known as 919 Wyandotte Street, Bethlehem, Pa., is declared invalid and is hereby set aside.

Accordingly, plaintiff-bank is hereby granted 60 days from the date hereof to redeem the subject premises by payment to the Bureau of the amount of any outstanding tax claims and interest and

costs thereon, in default whereof the Bureau is ordered to expose said premises to tax upset sale in conformity with the Real Estate Tax Sale Act.

It is further ordered that the Bureau shall refund in full to defendant, Henry A. Faleski, all sums paid over to it by him in connection with the purchase of the above-mentioned property and that the deed of conveyance from the County of Northampton to Henry A. Faleski dated January 5, 1977, and recorded in Deed Book Vol. 558, page 300, be canceled and set aside.