## Watson *v.* Ciaffoni, Appellant.

Argued March 15, 1956. Before STERN, C. J., JONES, BELL, MUSMANNO and ARNOLD, JJ.

*William R. Dennison, Jr.,* with him *Vincent R. Massock,* for appellants.

*Adolph L. Zeman,* with him *Robert L. Zeman* and *Zeman & Zeman,* for appellees.

OPINION BY MR. JUSTICE JONES, April 16, 1956:

The question in this case is whether the tax sale at which the defendants purchased the plaintiffs' property was illegal and void because of the failure of the local tax claim bureau to give the owners proper notice by registered mail of the filing of the return of unpaid taxes against the property and the formal entry of a claim therefor as well as notice of the subsequent sale. The court below held the sale to be invalid for the reason above mentioned and, accordingly, entered a final decree adjudging the defendants' title to the property illegal, void and of no effect and directing the defendants to deliver up the deed, which they received from the tax claim bureau, for cancellation, upon being reimbursed by the plaintiffs for the sum paid for the property at the tax sale.

The material facts are undisputed and are fully established by the learned chancellor's findings which the court en banc confirmed. Actually, the defendants excepted to but one of the findings and that dealt with a relatively immaterial and unimportant fact.

Plaintiffs acquired the property in controversy, consisting of an improved tract of some seventeen acres in Washington County, by deed from R. D. Watson, widower, in September, 1950. The deed, as duly recorded, showed on its face that the grantees' residence was

"Beech Bottom, Brooke County, West Virginia". The certificate of residence endorsed on the deed recited the grantees' post-office address as "P. O. Box 112, Beech Bottom, West Virginia". And, the recorder's certification of the transfer to the assessment office of the county, made pursuant to the Act of May 21, 1943, P. L. 571, Sec. 605, 72 PS §5453.605, certified the owners' post-office address as "Box 112, Beech Bottom, Brooke County, West Virginia". The plaintiffs were in fact residents of Beech Bottom, West Virginia, continuously from 1922 throughout all of the times presently material and their post-office address during all of that period remained Box 112, Beech Bottom, West Virginia.

Immediately upon acquiring title to the property, the plaintiffs entered into possession thereof, demised the premises to various tenants and thenceforth continued in possession uninterruptedly.

For the years 1951, 1952 and 1953 the property was assessed in the names of the plaintiffs as owners. But, their address was mistakenly shown on the assessment roll as R. D. #1, Canonsburg, Pennsylvania, with the further notation that they were "N.R." meaning "nonresident". The way the incorrect address for the new owners happened to be shown was that, when the change in assessment was made in the assessment office, pursuant to the recorder's certificate of the transfer, the initials of the name of the grantor and last preceding assessee (R. D. Watson) were stricken out and there was substituted therefor by the clerk in ink "W. R. and Frances". So that, the new assessment read "Watson, W. R. and Frances, Canonsburg R. D. #1, Pennsylvania"—and this, despite the fact that the recorder's certificate of the transfer showed the grantees' correct post-office address to be "P. O. Box 112, Beech Bottom, West Virginia."

The plaintiffs paid the county taxes for the year 1951 but received no notice of the road or school taxes for that year. It was the latter taxes, when unpaid, that became the basis of the tax lien upon which the property was later sold to the defendants. The plaintiffs also paid the county, road and school taxes for the year 1952 and the county and road taxes for 1953.

The unpaid 1951 road and school taxes were returned in 1952 by the tax collector to the tax claim bureau which sent a notice of the filing of the return and entry of a claim therefor by registered mail addressed to the plaintiffs at R. D. #1, Canonsburg, Pennsylvania. This registered letter was returned to the tax claim bureau, marked "unknown". The plaintiffs never received notice from anyone of the filing of the return or the entry of the claim. A month later the tax claim bureau posted a notice of the claim on the premises, but, of that, the plaintiffs were likewise not informed at any time. In the succeeding year the bureau mailed a notice of the proposed sale of the property, again addressed to the plaintiffs by registered mail at R. D. #1, Canonsburg, Pennsylvania. This notice was returned to the bureau marked "unclaimed —unknown". Several weeks later the bureau posted the premises with a notice of the proposed sale of which the plaintiffs likewise had no knowledge.

Thereafter the property was sold to the defendants by the tax claim bureau at public sale for a bid of $70.43 which covered the unpaid road and school taxes for 1951 and all of the 1953 taxes notwithstanding the plaintiffs had paid, when due, the road and school taxes for that year as hereinabove stated. The sale was duly advertised and notice of the confirmation nisi was published showing the return of sale. The tax claim bureau subsequently conveyed the property

to the defendants by a deed carrying a stated consideration of $70.43, the bid price.

At the time of the tax sale, the property, which was improved with two frame dwellings, had a fair market value of $6,500 to $7,000 as found by the court below and not excepted to by the defendants.

Little need be said in support of the action of the learned court below. The controlling law is statutory and so plainly stated as not to admit of any doubt. The applicable statute is the Real Estate Tax Sale Law of July 7, 1947, P. L. 1368, as amended, 72 PS §5860.101 et seq.

Section 308 (a) of the Act provides that "Not later than the thirty-first day of July of each year, the [tax claim] bureau shall give notice of the return of said [unpaid] taxes and the entry of such claim to each delinquent taxable, by United States registered mail, return receipt requested, postage prepaid, addressed to the owner at his last known post office address. If no post office address of the owner is known, or if a notice mailed to an owner at such last known post office address is not delivered to him by the postal authorities, then notice, as herein provided, shall immediately be posted on the property affected." The vital importance of the registered mail notice to the delinquent owner, as provided for in Section 308 (a), supra, is emphasized by the fact that Section 314 of the Act, which deals with proceedings to attack the validity of a tax claim, provides in Sub-section (e) that "No taxpayer shall have the right . . . to open a claim absolute under the provisions of this act, *except on the ground of payment of the tax involved or failure to receive notice*" (Emphasis supplied).

Likewise, Section 602, which is concerned with notice of a tax sale, provides, inter alia, that "notice of

the sale shall also be given by the [tax claim] bureau, by United States registered mail, return receipt requested, postage prepaid, to each owner . . ., addressed to his last known post office address, or if no post office address is known, or if the notice addressed to the owner is not delivered to the owner by the postal authorities, such notice shall be posted on the property." While this section of the 1947 Act originally provided that "No sale shall be defeated and no title to property sold shall be invalidated because of proof that mail notice as herein required was not received by the owner", it was amended by the Act of May 10, 1951, P. L. 258 (72 PS §5860.602 Pkt. Part), by inclusion of the following pertinent addition thereto: "provided such notice was given as prescribed by this section."

It is clear beyond question that the plaintiffs, as owners of the subject property, never received notice of the return of the unpaid taxes and the entry of a claim therefor nor of the sale of the property for the satisfaction of the delinquent tax claim as required by the statutory provisions above cited. This is readily understandable since no such notices were ever mailed to the plaintiffs at their last known post-office address. The appellants themselves admit as much. Nor was the failure in respect of the requisite notices the fault of anyone but the taxing authorities.

The appellants erroneously contend, however, that the posting of the premises supplied the statutory requirements as to notice to the delinquent owners. In answer to that, the learned court below correctly ruled that the posting of notice on the premises becomes efficient only after the requirements as to the mailing of notice by registered mail to the owners' last known post-office address have been faithfully complied with.

The appellants further argue that the recorder was not required by the Act of 1943, supra, to include in his certification to the assessment office the grantees' last known post-office address and that, consequently, the assessment office was justified in disregarding as surplusage so much of the recorder's certificate. It is true that it was not until the amendment of the Act of 1943, supra, by the Act of June 28, 1951, P. L. 926, that a recorder was required in the case of a deed transfer to include in his certificate to the board for the assessment and revision of taxes "the complete post office address of the grantee". While the transfer in the instant case took place in September, 1950, and the recorder's certificate thereof to the assessment office was made prior to the amendment of 1951, by the time that the tax claim bureau first had occasion (viz., July 31, 1952) to send notice to the plaintiffs of the delinquent taxes for 1951 and the entry of a claim therefor "the complete post office address of the grantee" was a requirement of a recorder's certificate and there was then on file in the assessment office the certificate which actually showed the plaintiffs' correct post office address.

But, even if the assessment office was under no duty at the time of the transfer to the plaintiffs to recognize and note the grantees' correct post office address as shown on the recorder's certificate, it was certainly not the province of the assessment office to show an obviously *incorrect* post office address for the grantees. That the address shown for them on the assessment roll was known by the assessment clerk to be incorrect is evidenced by the fact that there was noted on the assessment entry that the new grantees were "N.R." meaning "nonresident". The error in the post office address of the plaintiffs and the tax claim bu-

reau's failure to mail them the required notices in respect of the delinquent taxes against their property was the fault of the taxing authorities alone and vitiated the sale.

The cases of *Hess v. Westerwick*, 366 Pa. 90, 76 A. 2d 745, and *Ross Appeal*, 366 Pa. 100, 76 A. 2d 749, which the appellants seek to distinguish, accord with our holding herein which needs no further citation of supporting authority in addition to the controlling statutory provisions hereinbefore quoted.

Decree affirmed at appellants' costs.