Moore v. Weiss

*Gerald Hamburg*, for plaintiff.

*Raymond M. Seidel*, for defendants.

SMILLIE, J., March 8, 1965.—Plaintiff had filed a complaint asking cancellation of a deed for certain lots bought at a county treasurer's tax sale by defendants. It is alleged the tax sale was void, and no legal title passed to defendant-purchasers, for the requirements of the statute (Act of May 29, 1931, P. L. 280, as amended, 72 PS §5971g) governing county treasurers' tax sales were not complied with.

After argument before the court en banc, preliminary objections in the nature of a demurrer were sustained by an order of the court dated June 18, 1963, as to the Montgomery County Tax Claim Bureau and Lower Providence Township, but were dismissed as to Lewis Weiss and Suki Weiss, who were directed to file an answer.

### FINDINGS OF FACT

1. From April 26, 1935, to May 10, 1942, the date of her death, Della Gaddie was the owner of lots 1 and 2, section "O", Hillside Avenue, Lower Providence Township, Montgomery County, Pa., by deed recorded in the Office of the Recorder of Montgomery County in deed book 1712, page 305, on March 13, 1946. The deed showed the address of Della Gaddie to be 1157 South Fifteenth Street, Philadelphia, Pa.

2. Della Gaddie died intestate May 10, 1942, survived by her daughter and sole heir, Marie Gaddie

Moore, plaintiff herein. From 1944 to the present, plaintiff has resided at 2223 Ellsworth Street, Philadelphia, Pa., and from 1930 to 1944 she resided at 2233 Ellsworth Street, Philadelphia, Pa.

3. Della Gaddie, on July 25, 1941, paid the county treasurer the sum of $17.10 to redeem the lots, which had been sold at treasurer's sale for 1934 tax delinquency. The redemption receipts showed the payor's address as 2233 Ellsworth Street, Philadelphia, Pa.

4. On July 17, 1944, Marie Gaddie paid the taxes and interest in the amount of $6.34 for the lots for the years 1941, 1942 and 1943 to the office of the Treasurer of Montgomery County.

5. On April 21, 1950, the taxes for the lots for the year 1945 being unpaid, the county treasurer sold the lots at public sale.

6. Sometime in the middle of April 1952, at the request of plaintiff, a bill for delinquent taxes in the amount of $13.03 was sent by Raymond H. Hamilton, a collector of taxes for the county treasurer, and duly received by plaintiff. Said amount included the assessment for institution district, county, township, school taxes and interest for the years 1946 to 1950, inclusive, as well as the assessment of the school tax for 1951. Omitted from this bill were the taxes due for the institution district, county and township taxes for 1951. On April 21, 1952, the county treasurer received from plaintiff, Marie Gaddie Moore, by check drawn on the Roosevelt Bank, Philadelphia, Pa., the sum of $13.03 for the payment of the aforesaid taxes.

7. Sometime in the middle of April 1952, at the request of plaintiff, bills for the redemption of the lots upon payment of $25.20 were sent by the county treasurer to plaintiff and duly received. Said bill was paid by plaintiff in the form of a check drawn on the Roosevelt Bank, Philadelphia, Pa.

8. In 1951, the township tax collectors were respon-

sible and obligated to file their lien sheets on or before April 1st in the county treasurer's office. There were two persons collecting taxes on the properties in Hilltown Township, 1951: Lulu Sacks for the institution district, county and township, and Martin L. Thomas for the school district. Martin L. Thomas filed his lien sheet for the 1951 year in the county treasurer's office on April 1, 1952, but Lulu Sacks did not file her lien sheet for said year in the treasurer's office until April 30, 1952.

9. The 1951 institution district, county and township taxes on the lots amounting to $.77 have never been paid by Della Gaddie or plaintiff.

10. Duplicates of all the aforementioned bills and receipts sent to plaintiff from the county treasurer's office are on record and retained by said office, and are available.

11. In 1952, plaintiff had notified the county treasurer's office that her mother, Della Gaddie, had died, and to send all further tax bills on lots to plaintiff for payment.

12. The assessment books of the Board of Assessment and Revision of Taxes for Montgomery County for the years 1952 to 1957, inclusive, showed the owner's address to be 1157 South Fifteenth Street, Philadelphia, Pa., and the owner's name to be Della Gaddie for the years 1951, 1955 and 1956 and Della Goddie in 1952, and Vella Goddie in 1953 and Villa Goddie in 1954.

13. In March 1942, a letter was sent to Della Gaddie by Leslie Heyser, a prior tax collector for Lower Providence Township, at 2233 Ellsworth Street, Philadelphia, Pa., which letter was duly received by plaintiff.

14. Plaintiff, in 1952, notified Lulu Sacks, the Tax Collector for Lower Providence Township, of her mother's death, and requested that all further tax bills on the lots be sent to plaintiff for payment.

15. From the years 1951 to 1957, inclusive, Lulu Sacks obtained duplicates of the assessment records of the Montgomery County Board for the Assessment and Revision of Taxes. The duplicate records in her possession for 1951 listed the name and address of the owner of the lots for 1951 as Della Gaddie, 1157 South Fifteenth Street, Philadelphia, Pa. Her records for the years 1952 to 1957, inclusive, revealed the address of the owner of the lots as 1157 South Fifteenth Street, Philadelphia, Pa., but in each year a line was drawn through that address, and inserted above and instead was the address of 2223 Ellsworth Street, Philadelphia 46. The name of the owner of the lots in her duplicates was the same as that listed in the original records of the Montgomery County Board for the Assessment and Revision of Taxes, as set forth in fact number 12, supra, except that for the years 1952 and 1953, these records showed the additional notation that the bills were to be made out in care of Marie Moore.

16. From at least 1953 to 1957, Lulu Sacks sent the tax bills on the lots to 2223 Ellsworth Street, Philadelphia 46, and designated the owner, as set forth in her records more fully in fact number 15, supra. All these tax bills were received and paid by plaintiff, except one, the 1957 tax bill.

17. Lulu Sacks, from the years 1952 to 1956, as tax collector, submitted to the county treasurer's office lien sheets naming those persons who had not paid taxes on their lots. The name of Della Gaddie or any other person listed as owner of the lots in question was absent from said lien sheets, thereby signifying that the taxes on said lots were paid for those years.

18. As of the date of the tax sale, April 26, 1956, all the taxes on the lots were paid from April 26, 1935, to said date, except for the $.77 delinquency for the 1951 taxes as aforesaid.

19. The local tax assessor for Lower Providence

Township periodically obtained the tax assessment records of Lulu Sacks during her tenure as tax collector from 1951 to 1957 for the purpose of noting and making changes of addresses, and/or of owners of Lower Providence Township lots in his records. The tax assessor also asked Lulu Sacks to keep a list of all address changes and submit such a list to him; this was done on occasion.

20. The only notification of the April 26, 1956, tax sale given by the Treasurer of Montgomery County consisted of a registered mail notice postmarked April 6, 1956, sent to 1157 South Fifteenth Street, Philadelphia, Pa., and returned unopened, and marked *"unknown"*, and one newspaper advertisement that appeared on April 4, 1956, in the Times Herald, Norristown, published under the general heading of "Treasurer's Sale", and under the subheading of "Lower Providence Township, Lots 1 and 2, Block 'O', Hillside Avenue", where the name of the owner was listed as "Della Goodie".

21. On April 26, 1956, Elkins Wetherill, then the Treasurer of Montgomery County, and, as such, responsible for the sales of properties for delinquencies in taxes, sold the instant lots, because of the $.77 1951 tax delinquency to defendants for the consideration as stated on the deed of $14.77.

22. The sale of these lots was confirmed nisi by decree of the Court of Common Pleas of Montgomery County on September 7, 1956, and made absolute on November 20, 1956.

23. On April 26, 1958, the two-year period of redemption expired.

24. On June 20, 1958, defendants placed the deed to said lots on record in the Recorder of Deeds Office of Montgomery County in deed book 2883, page 13.

25. The tax liens which subsequently arose for taxes for the years 1957 and 1958 were paid by defendants.

26. No improvements of any kind have been made on said lots.

## DISCUSSION

Plaintiff's prayer for relief and the facts as found give rise to two legal problems. The first is the jurisdiction of the court; the second is the validity of the tax sale.

Defendants have argued that plaintiff has an adequate nonstatutory remedy at law, and, therefore, equity should not take jurisdiction and grant relief. Such argument was advanced by defendants in support of preliminary objections which were previously dismissed by the court. To certify the case to the law side of the court for decision would only cause additional expense, delay and needless repetition of testimony.

Although it is conceded that the parties may have a legal remedy, such will not oust equity jurisdiction: Hunter v. McKlveen, 353 Pa. 357 (1946). The legal remedy must be as "efficient, certain and prompt" as the equity remedy: Pennsylvania Railroad Company v. Bogert, 209 Pa. 589 (1904). Prior decisions indicate that equity suits seeking cancellation and reconveyance of tax titles because of unlawful tax sales are proper: Watson v. Ciaffoni, 385 Pa. 16 (1956), and March v. Banus, 395 Pa. 629 (1959).

The second question to be resolved is whether the taxing authorities have complied with all the statutory requirements governing county treasurer tax sales necessary to pass valid legal title to defendants.

The Supreme Court of Pennsylvania laid down the basic precepts of tax sales in Osmer v. Sheasley, 219 Pa. 390 (1908):

"The sale of real estate for the payment of taxes is regulated by statute, which makes provision for the several steps necessary to be taken in passing a good title to the purchaser. He who claims real estate by virtue of a tax title must be able to point to a substan-

tial compliance with all the essential requisites provided in the statute": Page 394.

The tax sale proceeding here in issue is governed by the Act of May 29, 1931, P. L. 280, sec. 7, as amended, 72 PS §5971g, which provides:

"The county treasurer shall advertise the fact of holding such sale, once a week for the three successive weeks prior to the holding of such sale, in at least two newspapers of general circulation in the county in which such seated land is located, if there be two newspapers so published; if there be only one, then in such newspaper so published in the county.

"Such advertisement shall set forth:

"(a) The purpose of such sale.

"(b) The time of such sale.

"(c) The place of such sale.

"(d) The terms of such sale.

"(e) A list of the seated lands affected and their location, and the owner or reputed owner of each.

"(f) Amount of taxes and interest.

"In addition to such advertisement, at least ten days before any such sale, written notice thereof shall be served by the county treasurer, by registered mail, upon the owner of such land, and if the whereabouts of the owner is unknown, such notice shall be served by registered mail upon the terre tenant, if any: . . . *Provided, however, That no such sale shall be prejudiced or defeated and no title to property sold at such sale shall be invalidated by proof that such written notice was not served by the treasurer, or that such notice was not received by the owner or terre tenant as herein provided.*

"The cost of such advertisements, notices and the service thereof shall be taxed as part of the costs of such proceedings and shall be paid the same as the other costs".

Thus, before there may be a valid sale of property

for unpaid taxes, notice would first have to be given to the owner. It should be noted that section 7 of the Act of 1931 above quoted does not purport to excuse the failure of the county treasurer to mail the required notice of the proposed sale to the proper owners, because such would be unconstitutional as constituting a deprivation of property without due process. Section 7 only eliminates as a valid objection a land owner's failure to receive said notice: Hess v. Westerwick, 366 Pa. 90 (1950).

The term "owner", as used in the notice provision of section 7, is restricted to one having a present interest or estate in the property proposed to be sold for a tax delinquency, and does not mean or include the assessed owner at the time the taxes became delinquent, even though he be a predecessor in title: Blasi.v. Alexander, 195 Pa. Superior Ct. 634 (1961); Shafer v. Hansen, 389 Pa. 500 (1957). Where the county treasurer serves notice upon a predecessor in title rather than upon the present owner, the sale is invalid: Venango County Treasurer's Report on Tax Sale, 18 D. & C. 2d 398 (1959); Blasi v. Alexander, supra, Shafer .v. Hansen, supra.

Shafer v. Hansen and Blasi v. Alexander, supra, are legal guideposts for notice requirements.

In the Shafer case, supra, testatrix died in 1942, leaving certain property by will to her two sons, who were named as executors. Although the will was probated, nothing was done to change the record ownership on the county assessor's rolls, and the property continued in the name of decedent. As in the present case, plaintiffs failed to inquire of the tax collectors and pay the taxes for the years in question. They also had taken no steps to have the ownership of the property changed on the tax rolls. The record in the county treasurer's office indicated that the taxes had been paid during the years following testatrix' death by various persons, in

one year by the dead woman. In no instance did it appear that they had been paid by either of the heirs. Notice of the sale was sent to decedent more than 10 years after her death. The court, invalidating the sale, placed a responsibility on the tax assessor to search the records of the register of wills to determine the true ownership of property, when the decedent-owner had been deceased for a period of 10 years.

In the Blasi case, supra, Charles Alexander owned property at the date of his death in 1943, his wife, Edith, having predeceased him. No will of either parent was filed, and no administration of the estates of Charles or Edith Alexander was ever raised; nor did county records show the succession of defendants to the title. Two of the heirs, Edward and Joseph Alexander, were living in the property in 1951. Taxes up to and including 1950 were paid in full. The records in the assessment office showed that they were paid for the last years before 1951 by Sarah Alexander, who was the wife of Joseph Alexander. The property was sold in 1953 for unpaid county taxes. No notice of the tax sale was sent or delivered to any of the heirs. The notice was directed to "Charles Alexander Estate, c/o Sarah Alexander", 800 Burton Street, Sharon Hill, Delaware County, Pa. Sarah Alexander was not one of the heirs, although she was the wife of one of them. The notice actually was delivered to a young child, Josephine Alexander, daughter of Joseph and Sarah Alexander, upon the property at 800 Burton Street. The court again held the assessor had failed to ascertain timely the owner of the property as the law required him to do.

Thus, in both the Shafer and Hansen case the courts placed a duty upon the tax assessor to investigate public records to find the true owner of assessed property.

The Shafer and Blasi cases are similar to the instant case, in that nothing was done to change the record

ownership on the county assessor's rolls and the property continued in the name of decedent, the heir-owners failed to seek out the tax collectors and pay the taxes for the year in question, and the new ownership of the property in question could have been determined by the tax assessor by consulting the public records.

However, unlike the instant case, in Shafer and Blasi, none of the taxes were ever paid by the heir-owners, and the tax collector did not know the heir-owner's name and proper address for at least three years before the tax sale. The courts held there was a lack of notice in both Shafer and Blasi, despite the fact that, in Shafer, notice was sent to decedent by registered mail at the last known postal address and bore the return receipt signed by one of the owner-heirs, and in the Blasi case notice of the tax sale was directed to decedent's estate's last known postal address in care of one of the heir's wives and actually delivered to one of the heir's daughters.

In the case at bar, notice of the proposed tax sale was not sent or delivered to plaintiff-owner at her last known address, known by the tax collector for at least three years, and which should have been known by the county treasurer and tax assessor. Moreover, whereas in the Shafer and Blasi case, since the notice was duly delivered or accepted, it could be argued that the taxing authorities could have reasonably relied upon an assumption that the proper owners were found and served, in the present case the letter was returned "unknown", thereby alerting the authorities that the owner received no notice and suggesting that they investigate it to see if their records reveal the right owner.

In addition, not only was the treasurer notified by plaintiff of her existence and address, but had the treasurer looked into his records of prior payments, he would have noted duplicates of the bills and redemption

receipts as early as July 25, 1941, showing the existence of plaintiff as owner and of the Ellsworth Street address. Instead of following this superficial type of investigation, the treasurer chose to rely upon the incorrect county assessment records.

For these reasons, the notice of the tax sale was inadequate. The procedure to be followed by the treasurer in determining ownership of properties to be sold at tax sales has been strongly indicated by our Supreme Court in Ross Appeal, 366 Pa. 100 (1950):

"It seems difficult to understand why tax collecting agencies seem so prone to ignore ordinary modern common sense business practices. Its own records would seem to disclose whether any returns for delinquent taxes due for years subsequent to 1944 had been made. Therefore the absence of returns for subsequent taxes should have indicated to the tax claim bureau that all taxes for the five years subsequent to 1944 had been paid. This then ought to have suggested a delinquency not deliberate but due to some oversight or error. In such circumstances a letter or a telephone call of inquiry to the local collector would speedily have brought forth the important information that the property had changed owners. Then a mere demand on the new owner would no doubt have quickly brought the payment of the $29.12 taxes without resort to court proceedings, or a sale or further expense to the county or taxpayer".

Besides the Supreme Court's common-sense approach, the Act of May 25, 1945, P. L. 1050, sec. 6, as amended, 72 PS §5511.6, required the tax collector to mail the tax bill to the last known address of each taxable, and 72 PS §5511.4 required the tax collector to keep stubs or tax bill duplicates containing the same information as given in the receipt. It would be only logical to inquire of the tax collector to see if the information which he must keep at law reveals a new ad-

dress or a new owner for the premises. This is especially true after receiving the registered letter marked "unknown". Had the treasurer so inquired, he would have obtained the proper name and address of the owner, and have given notice, as the Act of 1931 requires.

For these reasons, the tax sale was invalid, and no title to the properties in question passed to defendants.

## ORDER

And now, March 8, 1965, we find for plaintiff and against defendants; the deed of Elkins Wetherill, Treasurer of Montgomery County to Lewis Weiss and Suki Weiss, dated April 26, 1956, and recorded in the Office of the Recorder of Deeds of Montgomery County in deed book no. 2883, page 13, is invalid and of no effect; the Recorder of Deeds of Montgomery County is hereby authorized and directed to inscribe on the margin of said deed this decision and judgment thereunder; the title of Marie Gaddie Moore to all that certain piece or parcel of land situate in Lower Providence Township, known as Lots 1-2, Block O, Hillside Avenue, Montgomery County, Pa., is valid and indefeasible for all purposes as against all rights and claims of defendants, their heirs and assigns, arising from the aforesaid treasurer's sale. Defendants shall deliver for cancellation deed to the lots and/or reconvey the deed to the lots to plaintiff, upon payment by plaintiff to defendants of the sums expended by defendants for the purchase of said lots, including payment of the taxes to date.

## CONCLUSIONS OF LAW

1. Equity has proper jurisdiction over this matter, and can properly grant the relief prayed for by plaintiff in her complaint.

2. The notice sent to the deceased predecessor in title as "owner", Della Gaddie at 1157 South Fifteenth

Street, Philadelphia, Pa., on April 6, 1956, was not in accordance with the requirements of the County Treasurer's Tax Sales Law of 1931.

3. The tax collector return filed on April 30, 1952, setting forth the deceased predecessor in title, Della Gaddie, as "owner", was not in accordance with the requirements of the County Treasurer's Tax Sales Law of 1931.

4. Failure of the taxing authorities to comply with the statutory requirements governing the present county treasurer's sale invalidates the sale and any title passed pursuant thereto was void.

5. Costs should be borne equally by plaintiff and defendants.