## Associates Discount Corporation v. Myers

*Edward J. Steiner*, for plaintiff.

*Joseph A. Nickleach*, for Frank West, Jr., et ux.

*Peter Calarie*, for Armstrong County Tax Claim Bureau.

GRAFF, J., August 24, 1972.—Plaintiff instituted this action in replevin as it relates to the right of possession to a mobile home. The parties agreed to submit the case to the court for trial without a jury. Thereafter, there was filed a stipulation of facts. After reviewing the admitted facts, testimony was taken particularly relating to issues which the court felt were not covered in the stipulated facts. We now make the following:

### FINDINGS OF FACT

1. Heilman Homes, Inc., assignee, plaintiff, is a

corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its offices and principal place of business in Manor Township, Armstrong County, Pa.; its post office address being 305 Seventeenth Street, Ford City, Pa. 16226. (Stipulated)

2. Defendants, Frank West, Jr. and Lawave West, reside in Charleston, S. C.

3. On April 13, 1965, S. David Myers and A. Larue Myers purchased a new 1965 Victor Mobile Home bearing serial no. C5818 from Heilman Homes, Inc., and agreed to pay the sum of $7,000.44, including insurance and finance charges, after trade-in allowance. (Stipulated)

4. On April 13, 1965, S. David Myers and A. Larue Myers executed a security agreement relating to said mobile home calling for a total time purchase price of $7,000.44 payable in 84 equal monthly installments of $86.95 each, beginning on May 27, 1965. (Stipulated)

5. On April 13, 1965, Heilman Homes, Inc., assigned its rights under the said security agreement to Associates Discount Corporation "with recourse" for the consideration of the amount of $4,761.91 which was paid to Heilman Homes, Inc., by Associates Discount Corporation for said assignment. (Stipulated)

6. On April 26, 1965, a certificate of title for the said Victor Mobile Home was issued to S. David Myers and A. Larue Myers by the Pennsylvania Department of Revenue; said certificate of title bearing on its face a notation of an encumbrance in favor of Associates Discount Corporation in the amount of $7,000.44. (Stipulated)

7. Neither the security agreement nor a financing statement relating to this transaction was filed with

the Pennsylvania Department of State or with the Prothonotary of Armstrong County, Pa. (Stipulated)

8. The Victor Mobile Home was delivered to a lot of land containing 0.34 acres situate in Cowanshannock Township, Armstrong County, Pa., which was owned by S. David Myers and A. Larue Myers, his wife, and said mobile home was placed on bearing piers consisting of unmortared concrete block placed on the ground surface without footings with the axles being left in the original position on the mobile home. The weight of the mobile home was at all times supported entirely by the supporting or bearing piers on which the two I-beams running the length of the mobile home were placed. (Stipulated) It was delivered to the site, placed in position and leveled by Heilman Homes, Inc.

9. Subsequently, the said S. David Myers and A. Larue Myers added a laundry room and porch and awning and enclosed the mobile home in the following manner:

a. Six feet of the door side adjoining the laundry room with mortared cement block.

b. The back of the mobile home with mortared cement block.

c. The front of the mobile home with mortared cement block.

d. The other side or off-door side of the mobile home with composition board and roofing paper. (Stipulated)

10. Water, gas, electric and sewage facilities were connected to the mobile home. (Stipulated)

11. The mobile home has remained on the said land in the same position and manner set forth in paragraph no. 8 and paragraph no. 9. (Stipulated)

12. A sidewalk leading to the door of the mobile home was constructed together with a front patio

with awning and ornamental railing. Shrubbery was planted in the yard of the front of the mobile home. (Stipulated)

13. The Board of the Assessment and Revision of Taxes of Armstrong County assessed the mobile home as part of the said real estate owned by S. David Myers and A. Larue Myers. (Stipulated)

14. One tax statement was sent to the owners and the tax statement included the taxes on the land and on the mobile home.

15. Real estate taxes levied and assessed against the said property for the years 1966 and 1967 were returned unpaid to the Armstrong County Tax Claim Bureau, thus becoming liens on said real estate. (Stipulated)

16. In due course, the property was advertised for tax sale by the Armstrong County Tax Claim Bureau as "Trailer .34 acres" and the sale was scheduled for September 9, 1968. Notice of sale was published in the Kittanning Daily Leader Times on August 23, August 30 and September 6, 1968. Notice was given to A. Larue Myers on July 3, 1968. (Stipulated)

17. Armstrong County Tax Claims Bureau gave no notice of the filing of the aforesaid liens for unpaid taxes to Associates Discount Corporation or to Heilman Homes, Inc. (Stipulated)

18. Armstrong County Tax Claim Bureau gave no notice to Associates Discount Corporation or to Heilman Homes, Inc., of its intention to expose said property to sale on September 9, 1968, for unpaid taxes other than the notices given by publication. (Stipulated)

19. S. David Myers and A. Larue Myers failed to meet their monthly installment obligations on the mobile home under the terms of said security agree-

ment and were in default on and prior to July 5, 1968, and the said S. David Myers and A. Larue Myers were also in default under the security agreement for failing to pay promptly all taxes and assessments and to keep the vehicle free from liens. (Stipulated)

20. On July 5, 1968, at September term, 1968, no. 207, Associates Discount Corporation entered a judgment against the said S. David Myers and A. Larue Myers in the Court of Common Pleas of Armstrong County, Pa., on a warrant of attorney contained in the said security agreement and an execution on said judgment was issued October 3, 1968, at December term, 1968, Ex. no. 19. (Stipulated)

21. On August 12, 1968, Associates Discount Corporation applied for a certificate of title in its name covering the said mobile home and the certificate of title was issued by the Pennsylvania Department of Revenue.

22. The said mobile home has remained upon the lot as aforesaid at all times pertinent hereto. (Stipulated)

23. The certificate of title issued to Associates Discount Corporation on August 26, 1968, does not show any encumbrances upon its face in favor of any lienholder. (Stipulated)

24. On September 9, 1968, Armstrong County Tax Claim Bureau exposed the real estate of S. David Myers and A. Larue Myers, including the mobile home, for sale for unpaid taxes levied and assessed for the years 1966 and 1967. (Stipulated)

25. The president of Heilman Homes, Inc., Thomas C. Heilman, was present at the tax sale and bid upon the said property of S. David Myers and A. Larue Myers when it was exposed for sale. (Stipulated) Thomas C. Heilman, who is the president of Heilman Homes, Inc., learned of the tax sale two days prior

to the sale; appeared at the sale without counsel because of the late knowledge of the sale; bid on the real estate up to $800, believing that the mobile home could not be sold at the sale and intending to sell the real estate to Larue Myers and to refinance the mobile home for her in her own name as her husband had deserted her. He also felt that it would be easier to sell the mobile home and the land as a package if Mrs. Myers did not desire to repurchase it.

26. Frank West, Jr. and Lawave West, his wife, were successful in purchasing the said property at the tax sale for $850.00 cash and they thereafter entered into possession of the property. (Stipulated)

27. By deed dated October 10, 1968, the Tax Claim Bureau of Armstrong County, Pa., conveyed said property to Frank West, Jr. and Lawave West, his wife, and the deed was recorded in the Recorder's Office of Armstrong County, Pa., on December 6, 1968, in Deed Book Volume 516, p. 237. (Stipulated)

28. On October 3, 1968, Associates Discount Corporation caused a writ of replevin with bond to issue against S. David Myers, A. Larue Myers, Frank West, Jr., Lawave West, Magda West and County of Armstrong (Tax Claim Bureau). (Stipulated)

29. On December 11, 1968, Heilman Homes, Inc., in accordance with the terms of its previous assignment with recourse, took reassignment of the aforesaid security agreement from Associates Discount Corporation and at the same time Associates Discount Corporation also assigned to Heilman Homes, Inc., the certificate of title to said mobile home and its interest in the within replevin action. The consideration for the reassignment and assignment was paid by Heilman Homes, Inc., to Associates Discount Corporation in the amount of $4,254.27. (Stipulated)

30. On February 6, 1969, Heilman Homes, Inc., as

assignee of Associates Discount Corporation, filed its complaint in replevin alleging its title and right to possession of said mobile home. (Stipulated)

31. A counterbond was filed by Frank West, Jr., Lawave West and Magda West. (Stipulated)

32. As of the date of the hearing, the mobile home is still on the lot on which it was originally placed and in the manner set forth in paragraph no. 8 and paragraph no. 9. Various utility lines remain connected to the mobile home as does the room addition. The sidewalk still leads to the door of the mobile home and the patio awning and ornamental iron work are still connected to it. (Stipulated)

33. Frank West, Jr. and Lawave West, his wife, are in possession of said mobile home subject to the rights of their tenant who is renting the mobile home from them. They claim title and a right to possession by virtue of the tax sale held on September 9, 1968. (Stipulated)

34. The mobile home was repossessed on July 25, 1968, and notice of repossession was posted on the home by taping the notice to the home on or near the door. Mrs. Myers was aware of the repossession but did not desire to continue payments while the home was in her name and her husband's name but indicated that she desired to keep the home and the property if Mr. Myers' interest was removed.

35. This mobile home can be removed from the premises in three or four hours by jacking it up, placing wheels on the axle, disconnecting the utilities and separating the porch and addition. A truck would then tow the vehicle off the property in the same manner as it was delivered to the premises.

36. The Pennsylvania mobile home security agreement between S. David Myers and A. Larue Myers contained, inter alia, the following provisions:

"Said vehicle shall remain personal property and shall not become real property no matter how affixed thereto."

37. Mobile homes are customarily sold by an installment sales contract and financed through a bank or finance company over a period of years by assignment of a dealer generally with recourse.

38. In Pennsylvania, a certificate of title for a mobile home is issued by the Department of Revenue to the purchaser with the encumbrance noted thereon. The certificate of title is mailed by the Department of Revenue to the encumbrance holder.

39. Trade-ins of mobile homes are customary in the industry usually after seven years, and, when traded, the new mobile home is towed to and installed upon the same piers or foundation and the old mobile home is towed to the dealer's lot and resold.

40. No answer to the complaint was filed by any defendant and A. Larue Myers, now A. Larue Troup is raising no defense that the repossession of the mobile home by Associates Discount Corporation was not legal and proper.

41. Floy C. Jones, attorney for Armstrong County Tax Claim Bureau, announced at the tax sale that the mobile home was being sold as a permanent structure, a permanent fixture on the real estate, permanently on a foundation and, therefore, sold as part of the real estate and that he "could not verify the fact that it was movable as a trailer."

42. The mobile home was not permanently attached and could be moved in approximately three to four hours.

43. At the time of the tax sale, the unpaid taxes on the real estate consisting of 0.34 acres amounted to $15.14 and on the mobile home to $189.24 and

these taxes were paid to the various municipalities by the Tax Claim Bureau from the $850.00 paid by Frank West, Jr. and Lawave West.

## DISCUSSION

This action in replevin was instituted by plaintiff to recover possession of a mobile home sold by defendant Tax Claim Bureau to defendants Frank West, Jr. and Lawave West upon September 9, 1968. Plaintiff claims the right to possession based upon the alleged illegality of the tax sale. There is little dispute in the evidence. A number of facts were stipulated by the parties and after the hearing, further findings of fact were made by the court.

In April 1965, Heilman Homes, Inc., sold a new mobile home to S. David Myers and A. Larue Myers under an agreement by which the Myerses agreed to pay $7,000.44 in 84 equal monthly installments beginning May 27, 1965. A security agreement was executed by the parties and Heilman assigned the security agreement to Associates Discount Corporation for the sum of $4,761.91. On April 26, 1965, a certificate of title for the mobile home was issued to Myers by the Pennsylvania Department of Revenue and there appeared on the face of the certificate of title an encumbrance in favor of Associates in the amount of $7,000.44. The mobile home was delivered to a parcel of land in Cowanshannock Township containing 0.34 acres which was owned by Myers and the mobile home was placed upon the property. The mobile home was assessed for real estate taxes in the name of Myers who failed to pay the taxes for the years 1966 and 1967. The Armstrong County Tax Claim Bureau advertised the property for tax sale and gave written notice to Myers. Myers was also delinquent in taxes upon the parcel of land. Upon the

filing of the liens for unpaid taxes for the years 1966 and 1967, no notice was given by the Tax Claim Bureau to Associates or to Heilman and no notice (except by advertising) was given to either of said corporations of the intention to expose the property for sale for unpaid taxes. Myers had defaulted in making monthly payments under the security agreement and as a result of said default on July 5, 1968, Associates entered judgment against Myers under warrant of attorney in said security agreement and thereafter issued execution on the judgment. Associates went upon the property and posted notice of repossession under the terms of the security agreement, allowing the mobile home to remain on the lot.

On August 12, 1968, Associates applied for a certificate of title which was issued by the Pennsylvania Department of Revenue to it on August 26, 1968. On October 3, 1968, Associates filed the present action in replevin. Thereafter, the deed to defendants West was executed by the Tax Claim Bureau upon October 10, 1968. On December 11, 1968, the rights of Associates were assigned to Heilman Homes, Inc., for $4,254.27 in accordance with the recourse provisions of the original assignment to Associates. A new certificate of title was issued to Heilman Homes, Inc.

Prior to the year 1961, there was much litigation relative to the assessment of mobile homes as real estate. By amendments to the General County Assessment Act of May 22, 1933, P. L. 853, and the Fourth and Eighth Class County Assessment Act of May 21, 1943, P. L. 571, the legislature specified the manner in which mobile homes should be assessed for taxation purposes. The Act of September 23, 1961, P. L. 1601, amended the General County Assessment Law by adding the following in designating what is subject to taxation as follows: "Houses, house

trailers and mobile homes, buildings permanently attached to land or connected with water, gas, electric or sewage facilities . . .": 72 PS §5020-201. The Act of September 23, 1961, P. L. 1604, 72 PS §5453.201 amended the Fourth and Eighth Class County Assessment Law by adding similar words. The act also contained the following: "The provisions of this act should not be construed to repeal any provision of the Act of April 29, 1959 (P. L. 58), known as 'The Vehicle Code.' " The amending acts also provided that the land upon which such mobile home or house trailer is located at the time of assessment shall be valued separately and shall not include the value of the house trailer or mobile home located thereon.

The sale of mobile homes for delinquent real estate taxes is covered by the Real Estate Tax Sale Law of July 7, 1947, P. L. 1368, as amended, 72 PS §860-101, et seq. This act also provides for notice to be given by the Tax Claim Bureau to each delinquent by registered or certified mail of the fact that a claim has been filed in the Tax Claim Bureau showing unpaid taxes. This was amended in 1961 by adding: "In the case of a mobile home or house trailer subject to real property tax, a copy of such notice shall at the same time and in like manner be sent to the encumbrance holders of record": 72 PS §5860-308.

The Vehicle Code, 75 PS §203(b), inter alia, provides as follows: "The outstanding certificate of title, when issued by the secretary showing a lien or encumbrance, shall be adequate notice to the Commonwealth, creditors, subsequent mortgagees, lienors, encumbrancers and purchasers that a lien against the motor vehicle, trailer or semi-trailer exists, and failure to transfer possession of the vehicle, trailer

or semi-trailer shall not invalidate said lien or encumbrance."

When the liens were filed against the mobile home and returned as unpaid taxes, notice was given to Myers as required by the Act of Assembly, but no notice was given to Associates or Heilman of the filing of such liens as required by the Real Estate Tax Sale Law. At the time of the sale, on September 9, 1968, the certificate of title to the mobile home in question had been issued to Associates by the Department of Revenue. No notice was given to Heilman or Associates by the Tax Claim Bureau as to the sale of the property. The sale took place on Monday, September 9, 1968, and, upon the Saturday previous thereto, Thomas Heilman learned of the sale. The undisputed evidence discloses that he went to the sale and at that time the solicitor for the Tax Claim Bureau announced that the mobile home was being sold as real estate permanently attached to the land. Heilman bid at the sale in the amount of $800, believing that he was only bidding upon real estate and having in mind an agreement between him and Mrs. Myers that he would purchase the lot of land and thereafter enter into an agreement with her for continuation of the payments for the mobile home as they became due under the security agreement which had been executed. The Wests bid $850. and, thereafter, upon October 10, 1968, received a deed from the tax authorities.

Plaintiff contends that the sale of the mobile home was invalid for the reason that no notice was given to Associates, the encumbrance holder, of the return and filing of the tax lien as required by the Real Estate Tax Sales Act.

The notice provisions of the tax sales statutes must

be strictly complied with in order to guard against the deprivation of property without due process of law: Chester County Tax Claim Bureau Appeal, 208 Pa. Superior Ct. 384; Hughes v. Chaplin, 389 Pa. 93.

In Ross Appeal, 366 Pa. 110, 105, the court states, inter alia, as follows: "Since therefore the notice required by the Act was admittedly not given, the sale was basically invalid." See also Hess et ux. v. Westerwick, 366 Pa. 90.

In Watson v. Ciaffoni, 385 Pa. 16, the Supreme Court again held a sale invalid for failure on the part of the Tax Claim Bureau to send the required notice to the owner. See also Aronauer Appeal, 404 Pa. 654.

In Hess, supra, the court states that the purpose of tax sales is not to strip the taxpayer of his property but to insure the collection of taxes. To approve the validity of the tax sale would deprive plaintiff of a large sum of money and allow a sale to defendants West for a relatively small sum of money. In order to constitute a valid sale for the failure to pay taxes under the Real Estate Tax Sale Law of July 7, 1947, P. L. 1368, as amended, two steps are necessary. Notice must be given to the owner of the property; in this case that would be to the Myerses who owned the 0.34 acres of land and also had the title to the mobile home involved in this proceeding. The certificate of title to the mobile home had an encumbrance thereon in favor of Associates and possession of this title was in Associates. The Sales Tax Act provides that, under such circumstances, a like notice must be given to the encumbrance holder of record. Under The Vehicle Code, Associates was the holder of record. Admittedly, no such notice was given. It is true that the Real Estate Tax Sales Act only requires notice of the actual sale to be given to the owner which ordinarily would be Mr. and Mrs. Myers. In this case,

the certificate of title to the mobile home was in the name of Associates Discount Corporation at the time of sale.

It has been held many times by the appellate courts of this state that the provisions of the Real Estate Tax Sales Act must be strictly complied with in order to constitute a valid sale. That was not done in this case in that Associates was at no time given actual notice of the sale of the mobile home. We cannot believe that the fact that Thomas Heilman appeared at the sale and bid upon the property can permit us to ignore the failure of the Tax Claim Bureau to give the notice to it at the time of the filing of a lien. Under the Act of Assembly, this notice goes further than simply advising of the filing of a lien. It should also state that the property would be sold in the event of the failure to pay the taxes. We believe that Heilman acted in good faith at the time of the sale in his belief that the mobile home itself could not be sold. Certainly, his failure to bid a greater amount than $800 under the present circumstances cannot create an equitable estoppel. We are satisfied that Heilman Homes, Inc., and Associates Discount Corporation did everything required of them by law to protect their interests in the mobile home.

## CONCLUSIONS OF LAW

1. The sale of a mobile home for delinquent real estate taxes is provided for under the Real Estate Tax Sale Law.

2. Under the provisions of the Real Estate Tax Sale Law, when a tax claim is filed in the Tax Claim Bureau, the bureau is required to give notice by registered or certified mail to the delinquent and in the case of a mobile home to the encumbrance holders of record.

3. The Armstrong County Tax Claim Bureau failed to give notice to Associates Discount Corporation, the encumbrance holder, setting forth that a claim had been filed in said bureau and the subsequent sale of the mobile home for these unpaid taxes is void.

4. The right to maintain this action is vested in Heilman Homes, Inc.

5. Heilman Homes, Inc., is entitled to judgment against Frank West, Jr., and Lawave West on the counterbond in the amount of $4,409.16 with interest from September 9, 1968.

6. The unpaid taxes on the mobile home at the time of the invalid sale amounted to $189.24, and Heilman Homes, Inc., is required to pay this amount to Armstrong County Tax Claim Bureau.

7. The purchasers, Frank West, Jr., and Lawave West, having bid and paid the sum of $850 for what they believed to be the land and the mobile home, the Armstrong County Tax Claim Bureau is directed to return to Frank West, Jr., and Lawave West the sum of $850 less the delinquent taxes on the real estate in the amount of $15.14, together with costs.

## ORDER OF COURT

And now, August 24, 1972, judgment is now entered in favor of plaintiff and against defendants West in the replevin action upon the bond in the amount of $4,409.16, with interest from September 9, 1968.

Plaintiff is directed to pay the delinquent taxes on the mobile home in the amount of $189.24 and the Tax Claim Bureau is directed to return to Frank West, Jr., and Lawave West the sum of $850 less the amount of $15.14, being the delinquent taxes allocated to the lot of land, together with costs.