## Baltz v. Aronauer

*Edward S. Finkelstein,* for plaintiffs.
*Joshua D. Lock,* for defendant.
*Robert A. Enders,* for Dauphin County Tax Claim Bureau.

DOWLING, *J.,* January 30, 1976.—Not too many years ago, plaintiffs purchased a modest dwelling in the Borough of Highspire, known and numbered as 298 Mulberry Street, for the sum of $9,150. Stanley, an army pensioner of uncertain but hoary vintage[1] resided therein with his invalid wife, Edith. Their domestic tranquility was rudely shattered when in August of 1974 they were served with a notice of ejectment. Their home, they were told, had been sold at a judicial sale, for nonpayment of real estate taxes, to Milton Aronauer for $2,000. The present action is brought to set aside the tax claim deed for alleged defects in the proceedings.

From the pleadings, testimony and stipulations

---

1. "Q. How old are you Mr. Baltz? A. I don't know. My brother says between seventy-eight and eighty-one, so I don't know."

emerge in a basically uncontradicted factual background, an inequitable and, fortunately for the sake of justice, illegal picture.

During 1971, plaintiffs failed to make payment of county, borough and school taxes levied on the property. The Dauphin County Tax Claim Bureau, therefore, initiated proceedings in accordance with the Real Estate Tax Sale Law.[2] A Tax Claim Bureau notice of nonpayment of taxes was mailed to plaintiffs on July 28, 1972, notifying them that their property would be exposed to sale for the purpose of collecting the unpaid real estate taxes. The notice was returned undelivered and marked "addressee unknown" by the postal authorities. On August 16, 23 and 30, 1972, notice of the sale was published in the required newspapers and legal journal. In addition, the property was apparently posted.[3] Thus, all notice requirements imposed upon the Tax Claim Bureau by the Real Estate Tax Sale Law[4] were complied with. This is so even though plaintiff testified he had no actual notice, for the act specifically provides: "No sale shall be defeated and no title to

2. Act of July 7, 1947, P. L. 1368, as amended, 72 PS §5860.101, etc.

3. "Q. Wait, you did post the property with a notice on August 21, 1972, is that correct?

"A. Well, I will say, yes. With my signature attached I will say, yes, but remember this, with reservation. We actually fulfill our obligation here by hundreds and many hundreds per year in this attempt so far as posting property. I'm not denying the fact that this is not mine, I will say it is. But precisely to this one individually, well, it would take a wonderful mind to remember what you can do three years ago, especially when you are handling five or eight hundred copies. But for all intents and purposes I will say, yes, what is reflected here is to be correct."

4. Section 6 of the Act of 1947, as amended, 72 PS §5860.602.

property sold shall be invalidated because of proof that mailed notice as herein required was not received by the owner, provided such notice was given as prescribed by this section."[5]

Though the Baltz home was exposed to the Tax Claim Bureau sale in September of 1972, it was not sold at that time because the prescribed upset price was not bid. Thereafter, the Dauphin County Tax Claim Bureau, pursuant to section 610 of the Real Estate Tax Sale Law,[6] had a rule, returnable October 8, 1973, issued upon all parties in interest to show cause why the property should not be sold free and clear of all liens and encumbrances. Section 611[7] of the Real Estate Tax Sale Law provides: "Service of the rule shall be made in the same manner as writs of scire facias are served in this Commonwealth." Such writs require personal service.[8] While efforts were made to personally

---

5. 72 PS §5860.602.

6. 72 PS §5860.610.

7. 72 PS §5860.611.

8. "The writ of summons, the writ of attachment in execution, and the writ of scire facias in personal actions, may be served by the sheriff of the county wherein it is issued upon an individual, defendant or garnishee, in any one of the following methods:

"(a) By handing a true and attested copy thereof to him personally; or,

"(b) By handing a true and attested copy thereof to an adult member of his family, at his dwelling house; or,

"(c) By handing a true and attested copy thereof, at his place of residence, to an adult member of the family with which he resides; or,

"(d) By handing a true and attested copy thereof, at his place of residence, to the manager or clerk of the hotel, inn, apartment-house, boarding-house, or other place of lodging at which he resides; or,

"(e) By handing a true and attested copy thereof, at his place of business, to his agent, partner, or the person for the time

serve the court's rule, together with the "Notice of judicial sale" upon plaintiffs, these attempts proved unsuccessful.[9] The sheriff attempted to go to the property but mistakenly located it as a "vacant lot" and, apparently, simply left a copy of the notice on the property. The deputy sheriff could not explain why they wrote "vacant lot" on the 1973 writ (judicial sale) but not on the 1972 writ (Tax Bureau sale). Notice of the judicial sale was also sent by mail but, again, this was returned by the postal authorities marked "addressee unknown."

It is defendant's contention that since plaintiffs were legally advised of the Tax Claim Bureau sale and because the bureau and the sheriff's office attempted to effect service of the notice of the judicial sale, all due process requirements were met. In other words, since the act was complied with, with respect to the Tax Claim Bureau sale, defective notice with respect to the judical sale does not invalidate the proceedings. In support of his position, defendant cites Hess v. Westerwick, 366 Pa. 90, 76 A.2d 745 (1950), and Watson v. Ciaffoni, 385 Pa. 16, 122 A.2d 56 (1956).

In the Hess case, a property valued at $80,000

being in charge thereof, if upon inquiry there at his residence in the county is not ascertained, or if for any cause an attempt to serve at his residence has failed".: Act of July 9, 1901, P. L. 614 (No. 310), sec. 1, cl. 1, 12 PS §291, since superseded and suspended by section 1 of the Act of June 21, 1937, P. L. 1982 (No. 392), now embodied in Pa. R.C.P. 1451, et seq.

9." Q. Mr. Krupa [Deputy Sheriff] Do you know whether or not this yellow notice [copy of notice to be posted] that is now before you was served on Mr. or Mrs. Baltz November 19, 1973?

"A. No, I will say not . . .

"THE COURT: Do your records indicate personal service?

"THE WITNESS: [Clerk, Tax Claim Bureau] They never got it."

was sold for $60. The lower court registered its shock by invoking the doctrine of equitable estoppel, because the purchaser visited the property during the period of redemption and saw considerable evidence of a productive farm. The Supreme Court affirmed, but on the basis of improper notice. While the court did comment to the effect that the delinquent taxpayer should take the risk of mail miscarriage, the case does not hold that defects in a judicial sale are cured by adequate notice of the Tax Claim Bureau sale.

Watson v. Ciaffoni, 385 Pa. 16, 122 A.2d 56 (1956), was a case where the court set aside the sale of a property valued at approximately $7,000 for $70 because the owner had never received notice by registered mail, the notice being sent to the wrong address. It in no way supports defendant's position and, interestingly enough, it also points out that the posting of the premises does not supply the required statutory notice because it is only effective after the statutory requirements of the mailing of notice are faithfully complied with.

As a practical matter, a party might have knowledge of the Tax Bureau sale and attend it but remain silent when the upset price was not bid, feeling that this would give him additional time to save the property before the judicial sale.

It must be remembered that "due process," the cornerstone of our State and Federal institution, applies to property as well as to life and liberty. As said by Mr. Justice Pitney in Ochoa v. Hernandez Y Morales, 230 U.S. 139, 161, 33 S. Ct. 1033 (1912): "The principle known to the common law before Magna Charta, was embodied in that charter (Coke 2 Inst. 45, 50) and has been recognized since the

Revolution as among the safest foundations of our constitutions."

One could philosophize in this 200th year of our Nation's birth on the different meanings attributed to "due process," depending upon whether one is speaking of the rights of persons accused of crime or of dispossessed property holders. Our zeal for protecting the former is fast approaching the realm of self-destruction, while the latter seems relegated to the far periphery. In what manner and for what reasons the appellate courts have developed such an "affectional preference" for the criminal strata of our society is beyond the scope of the present opinion and, in any event, beyond the comprehension of the writer. Whatever else may be said, it must inhibit the taking of a man's property and giving it to another without notice and an opportunity to be heard.

"Due process," that magic phrase which has unlocked many a prison door, prevented numerous persons from receiving their just due and unleashed upon peaceful communities countless felons, can certainly be invoked in aid of the financially destitute to require strict compliance with statutes authorizing the government to sell private property at a fraction of its value.

In view of this discussion, we make the following

## CONCLUSIONS OF LAW

1. The statutory requirements for a judicial sale were not complied with in that plaintiffs were not properly served with notice.

2. This defect is not validated by fulfillment of the legal requirements for a Tax Claim Bureau sale.

3. The sale of plaintiffs' property at the judicial sale in January of 1974 was illegal.

## DECREE NISI

And now, January 30, 1976, it is hereby ordered and decreed that the deed of the Dauphin County Tax Claim Bureau to Milton Aronauer, dated March 11, 1974, and recorded in the Office of the Recorder of Deeds of Dauphin County in Deed Book "h", Vol. 55, p. 580, be and hereby is cancelled and that a copy of this decree shall be recorded in the recorder of deeds office and that a notation of the decree be made in the margin of the deed from the Tax Claim Bureau to Milton Aronauer aforesaid as recorded in the recorder of deeds office.

The Dauphin County Tax Claim Bureau shall return the sum of $2,000 to the defendant, Milton Aronauer.

The prothonotary is directed to enter this decree nisi and to notify the parties, or their counsel. If no exceptions are filed within 20 days after entering of this decree, a final decree upon praecipe will be entered.